

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

COVENANT MEDIA OF ILLINOIS, L.L.C, )
                                             )
       Plaintiff,                      )
                                             )
          vs.                           )    **No. 04 C 8130**
                                             )    **Judge Joan H. Lefkow**
CITY OF DES PLAINES, ILLINOïS,      )    **Magistrate Judge Denlow**
                                             )
       Defendant.                   )

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Covenant Media of Illinois, L.L.C. ("Covenant"), filed a fourteen-count complaint

against defendant City of Des Plaines, Illinois ("City"), challenging the constitutionality of the Des

Plaines sign ordinance ("Sign Ordinance"), both facially and as applied to Covenant. The court has

jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. The City has moved to dismiss

the complaint for lack of standing and failure to state a claim on which relief may be granted

pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. For the reasons stated below, the motion

is denied.

## I.    THE CITY'S MOTION TO STRIKE

In its reply brief, the City moved to strike the exhibits attached by Covenant to its response.

The court, however, may "examine documents that a defendant attached to a motion to dismiss ...

if they are referred to in plaintiff's complaint and are central to [its] claim." *Albany Bank & Trust*

*Co.* v. *Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir. 2002). Although neither party's Exhibit A

was attached to the complaint, both documents were referred to therein and central to Covenant's

claims. *See* complaint at ¶ 19. Accordingly, the court has relied on defendant's Exhibit A, which

is the City's Zoning Ordinance, and plaintiff's Exhibit A, which is the November 19, 2004 letter from the City to Covenant. The court also has considered Covenant's Exhibit B, which is the December 23, 2004 letter from the City to Covenant, because it was relevant to the court's consideration of its subject matter jurisdiction. *See, e.g., Alicea-Hernandez* v. *Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003). The court has not relied on Covenant's Exhibit C, which contains a number newspaper articles, because such materials did not relate to the court's subject matter jurisdiction and were not mentioned in the complaint.

## II. ALLEGATIONS OF THE COMPLAINT

### A. The Sign Ordinance

At issue in this litigation is the City's Sign Ordinance, which is contained in Article 11 of the City's Zoning Ordinance. The Sign Ordinance is a comprehensive scheme that regulates the content, permitting, placement, number, size, height, design, operation, and maintenance of signs within the City.[1] With few exceptions, the Sign Ordinance prohibits all off-premises signs. *See* § 11.2(C). The Sign Ordinance also prohibits signs "which display obscene, indecent, or immoral matter." § 11.2(I). The Sign Ordinance makes it unlawful to erect a non-exempt sign without first obtaining a permit from City officials. *See* § 11.3-7. Signs exempt from the permitting requirements include government flags and corporate flags. *See* §§ 11.3-7(F), (G). The Sign Ordinance also requires a permit for each billboard. *See* §§ 11.3-1, 11.3-3(C).

The Sign Ordinance provides that the Zoning Administrator shall take formal action on a

---

[1]The Sign Ordinance defines "sign" as "[a]ny object, device, or structure, or part thereof, which is used to advertise, identify, display, direct, or attract attention to an object, person, institution, organization, business, product, service, event or location by any means, including words, letters, figures, designs, symbols, fixtures, colors, illumination, or projected images." § 13.3.

fully complete sign permit application within 30 days. It further specifies that "[u]pon receipt of a fully complete sign permit application, the Zoning Administrator shall examine the application and all material attached thereto to determine its compliance with this Article, as well as any other applicable City Code, ordinance, or law." § 11.3-3(a). The Sign Ordinance also includes a process through which unsuccessful applicants may appeal the denial of their applications to post signs. According to its stated purpose, the Sign Ordinance exists to preserve the non-commercial character of residential neighborhoods, to provide reasonable yet appropriate conditions for identifying businesses and services, to reduce traffic hazards, and to protect the health, safety and general welfare of the City's residents. *See* § 11.1.

      B.    The Parties

Covenant engages in the business of posting and operating advertising signs and billboards used by businesses, churches, organizations, and individuals to disseminate both commercial and non-commercial messages. The City is a political subdivision of the State of Illinois located in Cook County.

After expending resources while investigating various sign locations in the City, Covenant entered into agreements with third-parties to post and operate signs within the City. Covenant applied to the City for permission to post and operate one sign, specifically a billboard or off-premises sign, on November 16, 2004. Covenant's application package contained information and documentation beyond what was required in the Sign Ordinance or mentioned in the City's application materials. The proposed sign complied with the State of Illinois' laws and regulations regarding signs. A City employee informed Covenant that its application appeared complete; however, the City denied Covenant's application as submitted by a letter dated November 19, 2004.

3

In its letter to Covenant, the City stated, in part: "In order for the permit to be further processed, the following items must be addressed and satisfactory correctional information must be resubmitted. ..." (Covenant Ex. A). The letter listed additional items and information that Covenant needed to submit with its application. Such materials included an approved Illinois Department of Transportation permit and soil borings. *Id.* The letter further noted that the proposed site needed the approval of the City's Plan Commission and City Council by ordinance. *Id.* Covenant received another letter from the City on December 23, 2004 detailing additional items that needed to be addressed and resubmitted with its permit application. (Covenant Ex. B). This letter noted that all of the items listed in the November 19, 2004 letter were "mandatory pre-conditions to the issuance of a local permit." *Id.* Covenant has not been able to post its proposed sign. Covenant also has completed application packages for additional billboards and intends to submit these applications to the City.

Covenant did not appeal the denial of its billboard application through the Sign Ordinance's appeals process and, instead, filed this lawsuit challenging the constitutionality of the Sign Ordinance in its entirety, both facially and as applied to Covenant. Specifically, Covenant alleges that the Sign Ordinance is unconstitutional because it grants city officials an impermissible level of discretion to approve or deny signs (count I); it violates equal protection (count II); it violates due process because of its vagueness (count III); it favors commercial over non-commercial speech (count IV); its permit requirements lack necessary procedural safeguards (count V); it impermissibly discriminates among non-commercial messages (count VI); it prohibits far more speech than can be justified by the interests asserted by the City (count VII); it does not directly advance any governmental interests in a material way (count VIII); its regulations are not narrowly tailored and

4

do not leave open ample alternatives to advertising signs (count IX); it unduly burdens the ability of citizens and property owners to engage in protected First Amendment activity using fundamental means of communication (count X); it impermissibly favors some commercial topics at the expense of others (count XI); it is unconstitutional as applied to Covenant (count XII); and it is unconstitutional as applied to third parties under the overbreadth doctrine (count XIII). Count XIV contains Covenant's request for injunctive relief.

## III.   MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. By contrast, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## IV.   ANALYSIS

### A.   Justiciability: Standing and Ripeness

"Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." *Renne* v. *Geary*, 501 U.S. 312, 316, 115 L. Ed.2d 288, 111 S. Ct. 2331 (1991). Principles included within the justiciability doctrines include the prohibition against

5

advisory opinions, standing, ripeness, mootness, and the political question doctrine. *Allen* v. *Wright*, 468 U.S. 737, 750, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). The City raises two challenges to the court's jurisdiction over this lawsuit. The City asserts that Covenant lacks standing to assert this lawsuit, or, alternatively, Covenant has standing to challenge the constitutionality of one provision of the Sign Ordinance only. The City also argues that this matter is not ripe for adjudication. Because "judges must consider jurisdiction as the first order of business," *Sherman* v. *Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437 at 440 (7th Cir. 1992), the court must decide whether it has jurisdiction over this action before reaching the constitutionality of the Sign Ordinance.

     1.     Standing

Covenant, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing. *Lee* v. *City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). To establish standing, Covenant must demonstrate "(1) injury in fact (the actual or imminent invasion of a concrete and particularized interest), (2) causation (a causal connection between the defendant's actions and the injury), and (3) redressability (the likelihood that the injury is redressable by a favorable court decision." *Heartwood, Inc.* v. *U.S. Forest Serv.*, 230 F.3d 947, 951 (7th Cir. 2000) (citations omitted). Covenant is not required to show by a certainty that a favorable judgment will redress its injury, but instead need only show a "probabilistic benefit from winning a suit. . . ." *Family & Children's Ctr.* v. *School City*, 13 F.3d 1052 at 1058 (7th Cir. 1994).

The standing doctrine also includes several judicially imposed limits on the exercise of federal jurisdiction. *O'Sullivan* v. *City of Chicago*, 396 F.3d 843, 854 (7th Cir. 2005), citing *Allen*, 468 U.S. 737, 751. Such limitations include "the general prohibition on a litigant's raising another person's legal rights. . . ." *Id.* In the context of the First Amendment, however, "courts have taken

a more liberal approach (under the prudential branch of the standing doctrines) to the ability of one party to assert the rights of another party." *United States* v. *Holm*, 326 F.3d 872 at 875 (7th Cir. 2003). In certain circumstances, the overbreadth doctrine allows "litigants already before the court to challenge a regulation on its face and raise the rights of third parties whose protected expression is prohibited or substantially burdened by the regulation" in order "[t]o avoid chilling the speech of third parties who may be unwilling or unlikely to challenge in their own stead." *Schultz* v. *City of Cumberland*, 228 F.3d 831 at 848 (7th Cir. 2000). "Thus, where a law regulates speech based on content, contains a prior restraint on protected speech, chills the right of expression of third parties, or restricts the expression of others not before the court, third parties may wage a facial challenge to the offending law based on First Amendment rights." *King Enters., Inc.* v. *Thomas Township*, 215 F. Supp. 2d 891 at 906 (E.D. Mich. 2002) (citations omitted).

Covenant has alleged sufficiently that it was injured as a result of the denial of its permit application. Covenant had expended its resources in locating potential sign locations, entering into agreements with third-parties to erect signs, and assembling a sign permit application to submit to the City. As the result of the rejection of its permit application, Covenant was denied the economic advantages of posting signs for its own commercial interest. Covenant's injury was caused by the denial of its application by the City pursuant to the City's Sign Ordinance. In the event that Covenant is successful in its claims, Covenant's injury may be redressed through injunctive relief that prohibits the City from enforcing its Sign Ordinance, as well as actual and consequential damages.[2]

---

[2]The City contends that even if Covenant is successful in challenging the validity of the Sign Ordinance, the Sign Ordinance's restriction on the number of billboards will preclude Covenant from erecting a billboard because the twelve billboard permits allowed by the Sign Ordinance have been distributed. Covenant makes this assertion

The City contends, however, that Covenant's permit application was denied pursuant to § 11.3 of the Sign Ordinance because the application was incomplete and, therefore, Covenant lacks standing to challenge the other provisions of the Sign Ordinance. The City cites to the Eleventh Circuit's decision in *Granite State Outdoor Advertising Inc.* v. *City of Clearwater, Florida*, 351 F.3d 1112 (11th Cir. 2003) in support of this contention. In *Clearwater*, the Eleventh Circuit reversed the district court's grant of standing to the plaintiff to challenge the entirety of Clearwater's sign ordinance. *Id.* at 1115. Clearwater had denied the plaintiff's billboard permit application because the plaintiff had sought to construct billboard signs much larger than any sign allowed under the Clearwater regulations. *Id.* at 1117. The plaintiff had suffered no injury regarding any other provision of Clearwater's sign ordinance. *Id.* As a result, the Eleventh Circuit found that the plaintiff only had standing to challenge the constitutionality of the regulation dealing with the size of billboards as applied to it and, under the overbreadth doctrine, as applied to non-commercial speech. *Id.*

As discussed below, the Sign Ordinance contains both content-neutral and content-based regulations that grant unfettered discretion to City officials. In *Clearwater,* the Eleventh Circuit expressly noted that *Clearwater* was distinguishable from a line of Supreme Court cases and precedent from the Eleventh Circuit allowing litigants to facially challenge a licensing scheme vesting the decision-maker with unbridled discretion. *Id.* at 1118. As a result, the court finds *Clearwater* inapplicable to the present matter and finds that Covenant has standing to assert a comprehensive attack on the constitutionality of the Sign Ordinance, both as applied to it and, under

without citing any evidence of record, and this allegation is not contained within the complaint. Accordingly, the court will disregard this allegation because it is not a part of the record before the court.

the overbreadth doctrine, to third parties. *See Freedman* v. *Maryland*, 380 U.S. 51, 56, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965) ("It is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license.").

    2.    Ripeness

In its reply brief, the City raises the issue of ripeness for the first time, arguing that this lawsuit is not ripe for a judicial determination because Covenant has not established that its permit application was conclusively denied.[3] The "basic rationale" for the existence of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract agreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbot Labs.* v. *Gardner*, 387 U.S. 136 at 148-49, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967). In the context of the First Amendment, however, the standing and ripeness requirements are more relaxed than in other contexts. *Sequoia Books, Inc.* v. *Ingemunson*, 901 F.2d 630, 640 (7th Cir. 1990) ("'breathing room' . . . attaches to the standing doctrine in the First Amendment context"); *ACLU* v. *Johnson*, 194 F.3d 1149, 1154-55 (10th Cir. 1999) ("Ripeness requirements . . . are somewhat more relaxed when First Amendment values are implicated"). "Ripeness determinations depend on 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Metro. Milwaukee Ass'n of Commerce* v.

---

[3]Generally, issues raised for the first time in a reply brief are deemed waived. *Marie O.* v. *Edgar*, 131 F.3d 610, 614 n.7 (7th Cir. 1997). Despite the City's raising the ripeness issue for the first time in its reply brief, the court is obliged to consider the ripeness issue because of its potential effect on the justiciability of the lawsuit.

*Milwaukee County*, 325 F.3d 879 at 882 (7th Cir. 2003), citing *Abbott Labs*, 387 U.S. at 149.

The City argues that Covenant failed to demonstrate that its application was conclusively denied because the November 19, 2004 letter from the City to Covenant states that "[i]n order for the permit to be further processed, the following items must be addressed and satisfactory correctional information must be resubmitted . . . ." The City ignores the preceding sentence, which states: "Based on the information provided, the City must deny the permit request as submitted." While the letter allowed Covenant to reapply for a permit, the letter was a conclusive response to Covenant's permit application. In addition, Covenant received a second letter from the City on December 23, 2004 in which its permit application was denied again. (Covenant Ex. B). As a result, this lawsuit contains issues fit for a judicial decision and hardship would result to Covenant if the court withheld its consideration. Accordingly, the court finds that this lawsuit is ripe for judicial review.

**B.    The Sign Ordinance**

The First Amendment forbids Congress from enacting laws "abridging the freedom of speech." U.S. Const. amend I. States are also forbidden from enacting and enforcing such laws by the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV, § 1. Signs are a form of expression protected by the First Amendment. *See City of Ladue* v. *Gilleo*, 512 U.S. 43, 48, 129 L. Ed. 2d 36, 114 S. Ct. 2038 (1994). The Supreme Court has recognized, however, that signs "pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs. . . ." *Id.*

To determine whether a government regulation of speech is constitutional, the court analyzes

whether the challenged regulation is "content-based" or "content-neutral." Content-based regulations must meet a more exacting standard than content-neutral regulations that limit the "time, place and manner" of the speech. *See Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983). Content-based regulations distinguish favored from disfavored speech based on the ideas expressed. *Turner Broad. Sys. Inc.* v. *F.C.C.*, 512 U.S. 622, 643, 129 L. Ed. 2d 497, 114 S. Ct. 2445 (1994). If it is necessary to look at the content of the speech in order to determine whether the speaker violated a regulation, the regulation is content-based. *Gresham* v. *Peterson*, 225 F.3d 899, 905 (7th Cir. 2000). By contrast, a government regulations of speech is content-neutral so long as it is "justified without reference to the content of the regulated speech." *Ward* v. *Rock Against Racism*, 491 U.S. 781, 791, 105 L. Ed. 2d 661, 109 S. Ct. 1746 (1989) (citation omitted). Thus, "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id.* (citation omitted).

A.    Content-Neutral Regulation of Signs

In the present matter, the parties disagree as to whether the Sign Ordinance is a content-based or content-neutral regulation of signs. The City argues that the Sign Ordinance is content-neutral because the purposes behind the Sign Ordinance  are unrelated to the content of the messages of the proposed signs.  These purposes include the preservation of the non-commercial character of residential neighborhoods, providing reasonable conditions for identifying businesses and services, reducing traffic hazards, and protecting the health, safety and general welfare of the City's residents. *See* § 11.1.

Covenant argues to the contrary that the Sign Ordinance is content-based because it defines

11

and restricts signs based on their content. For example, § 11.3-7 exempts "public service signs," which are "signs used for safety purposes relative to the repair or maintenance of streets, sidewalks, or utilities in a public right-of-way" from the permitting requirements of § 11.3. Offering the example that real estate signs may only advertise the sale, lease, or rent of property, Covenant further asserts that the Sign Ordinance is content-based because it prescribes the content of messages that may be displayed. Covenant also argues that the Sign Ordinance prohibits or restricts the placement of signs depending on the content of the message displayed. For example, the Sign Ordinance limits off-premises signs to the City's commercial, manufacturing, and institutional districts and subjects to forfeiture signs that advertise a defunct business or unavailable product or service.

Similar arguments were raised and rejected by a majority of the justices of the Supreme Court in *Metromedia* v. *City of San Diego*, 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882 (1981), and by Judge Rovner in *Scadron* v. *City of Des Plaines*, 734 F. Supp. 1437 (N.D. Ill. 1990), *aff'd* 982 F.2d 502 (7th Cir. 1993). In *Scadron*, Judge Rovner considered and rejected the argument that the Des Plaines sign ordinance was invalid because it used the content of signs as the basis for determining whether or not they were permitted. *Id.* at 1445. At that time, the Des Plaines sign ordinance made it unlawful to erect any sign without first obtaining a permit but exempted certain signs from the sign ordinance's provisions, including real estate signs not exceeding eight square feet in area, professional name plates, bulletin boards not over eight square feet, memorial signs or tablets, and traffic or other municipal signs. *Id.* at 1440. Relying on the concurring and dissenting opinions in *Metromedia*, in which a majority of Justices stated that the limited exceptions to the San Diego sign ordinance's general prohibition on billboards were too insignificant to rise to the level of content-based discrimination, Judge Rovner concluded that the exemptions were insufficient to alter the general

12

nature of the restrictions or to constitute a content-based distinction among speakers.[4] *Id.* at 1445-46. *See also Lavey* v. *City of Two Rivers*, 171 F.3d 1110 at 1116 (7th Cir. 1999) (exemption of signs such as construction signs and government signs from sign ordinance was fully justified).

As in *Scadron*, many of the exemptions contained in § 11.3-7 from the Sign Ordinance's provisions would fail to alter an otherwise content-neutral ordinance. The express purposes of the Sign Ordinance, as stated in § 11.1, include the preservation of the non-commercial character of residential neighborhoods, reducing traffic hazards, and protecting the health, safety and general welfare of the residents of the City. The Sign Ordinance maintains a general prohibition on off-premises signs in the absence of a permit, and many of the exemptions contained in § 11.3-7, such as public information signs, memorial plaques, and time and temperature signs, do not regulate based on a particular viewpoint or a favored cause. *See Weinberg* v. *City of Chicago*, 310 F.3d 1029 at 1037 (7th Cir. 2002) (peddling ordinance content-neutral where ordinance made no reference to the content of speech but maintained a general prohibition on the sale of merchandise).

B.    Content-Based Regulation of Signs

    A.    Section 11.3-7(F), (G)

The current version of the Sign Ordinance, however, has gone beyond the limited exemptions contained in the version at issue in *Scadron*. A comparison of the exemptions contained in § 11.3-7 with the exemptions contained in § 4-5-15, the version of the Sign Ordinance in *Scadron*, reveals that

---

[4]The court rejects the City's argument that because a more restrictive ordinance was upheld in *Scadron*, the court should find the current version of the City's Sign Ordinance constitutional. As Covenant points out, the current version of the Sign Ordinance contains an express prohibition on all off-premises signs, with few exceptions. The version of the Sign Ordinance at issue in *Scadron* contained no such language. In addition, the court's review of the current Sign Ordinance reveals that certain provisions of the Sign Ordinance are content-based, grant unbridled discretion to City officials, and that adequate safeguards are lacking. *See* parts 2, 3, and 4, *infra.*

the City has added exemptions for, *inter alia*, government flags[5] and corporate flags.[6] The Sign Ordinance defines government flags as "[f]lags of any country, state, or unit of local government." § 11.3-7(F). The Sign Ordinance does not define "corporate" or "corporate flag." These exemptions for government and corporate flags require an examination of the content of the proposed flags to determine whether such flags fall within the exemptions to the permit requirements. Accordingly, § 11.3-7(F) and (G) are content-based regulations of speech. *See, e.g., Dimmit* v. *City of Clearwater*, 985 F.2d 1565, 1570 (11th Cir. 1993) (sign ordinance differentiated between speech based upon its content where it exempted only government flags from its permitting requirements).

In addition, the exemptions for corporate flags and government flags are distinguished from the Sign Ordinance's prohibition on "signs which flutter, undulate, swing, rotate, oscillate or otherwise move,"[7] as well as "[t]emporary signs such as pennants, banners, and streamers" in the absence of a sign permit.[8] Because the Sign Ordinance contains a general exemption for corporate flags and government flags but prohibits or requires a permit for all other flags, including flags containing other commercial and non-commercial messages, Covenant states a claim that the Sign Ordinance unconstitutionally favors commercial speech over non-commercial speech (count IV), impermissibly discriminates among non-commercial messages (count VI), and impermissibly favors

---

[5] § 11.3-7(F).

[6] § 11.3-7(G).

[7] § 11.2(A)

[8] § 11.2(A)(1)

14

some commercial topics at the expense of others.[9]

        B.     Section 11.2

Section 11.2 also is a content-based regulation of speech. Section 11.2 prohibits signs from displaying "obscene, indecent, or immoral matter." Whether the message displayed on a sign is obscene, indecent, or immoral requires an examination of its content. It requires a judgment as to whether what the message says is proper, which is distinct from a decision as to whether a sign is classified as a real estate sign or address sign. In addition, § 11.2 is a content-based regulation of speech that applies to both commercial and non-commercial speech. As a result, § 11.2 is subject to strict scrutiny.[10]

Relying on § 11.2, Covenant asserts a claim that the Sign Ordinance is unconstitutional as applied to third parties because it is vague and overbroad. The Sign Ordinance does not specify the criteria that should be used in making the decision. Section 11.2 also does not define "obscene," "indecent," or "immoral." In the absence of such guidance, the court finds that Covenant states a claim that the Sign Ordinance is overbroad. *See Grayned* v. *City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972) (enactment is void for vagueness if prohibitions are not clearly defined); *Solomon* v. *City of Gainesville*, 763 F.2d 1212, 1213 (11th Cir. 1985) (finding

---

[9]Non-commercial speech is afforded greater protection than commercial speech. Content-based restrictions on non-commercial speech are analyzed under the "strict scrutiny test." *Boos* v. *Barry*, 485 U.S. 312, 321-22, 99 L. Ed. 2d 333, 108 S. Ct. 1157 (1988). Under that test, the City must "show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* (internal quotes omitted). Content-based restrictions on commercial speech, by contrast, are analyzed under the four-part test introduced by the Supreme Court in *Central Hudson Gas & Elec. Co.* v. *Public Serv. Comm'n of New York*, 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343 (1980). This test requires the court to determine whether (1) the speech is protected by the First Amendment, (2) the government interest is "substantial," (3) the regulation "directly advances the governmental interest asserted," and (4) the regulation is no more extensive than necessary to serve the governmental interest. *Id.* at 565.

[10]*See, supra*, n.9.

unconstitutionally vague an ordinance which prohibited signs displaying "any statement, word, character or illustration of an obscene, indecent or immoral character such as will offend public morals.").

3.      Discretion Given to City Officials By Content-Neutral Regulations

While the Sign Ordinance contains both content-based and content-neutral regulations of speech, the court recognizes that "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression. Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." *Thomas* v. *Chicago Park Dist.*, 534 U.S. 316 at 323, 151 L. Ed. 2d 783, 122 S. Ct. 775 (2002). As a result, "a time, place and manner regulation [must] contain adequate safeguards to guide the official's decision and render it subject to effective judicial review." *Id.*

Covenant asserts a claim that the Sign Ordinance is invalid because its content-neutral regulations give unbridled discretion to decision makers. *City of Lakewood* v. *Plain Dealer Publ'g Co.*, 486 U.S. 750, 757, 100 L. Ed. 2d 771, 108 S. Ct. 2138 (1988) ("[I]n the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agent constitutes a prior restraint and may result in censorship."). Covenant asserts that City officials are granted discretion to grant or deny permission to post a sign that is virtually limitless. Covenant cites to § 11.3-3(A) of the Sign Ordinance, which requires the Zoning Administrator to examine the permit application and its accompanying materials to determine its compliance with the Sign Ordinance, as well as any other applicable City Code, ordinance, or law. Section 11.3-3(C) requires that the City Manager "negotiate an agreement, on such terms, conditions and locations as is appropriate, including

16

but not limited to, a licensing fee of $15,000.00 per sign payable on completion of construction and other financial considerations to the City as the City Manager deems appropriate."

The Sign Ordinance also requires that the City Council approve the agreement reached by the City Manager for a billboard permit and that the Mayor sign the agreement. The Sign Ordinance does not specify the criteria that the City Council and mayor must use in deciding whether or not to approve the agreement. Even if the approval of an agreement for a billboard permit by the City Council and mayor is a mere formality, "the lack of specificity in the procedure and the amount of discretion vested in the official[s] lends itself to manipulation by the City. We cannot presume that officials will act in good faith and follow standards not explicitly contained in the ordinance." *Weinberg* v. *City of Chicago*, 310 F.3d 1029 at 1046 (7th Cir. 2002). By failing to specify whether the City Council and mayor merely formalize the agreement by signing off on the Zoning Administrator's findings or whether the City Council and mayor may rely on criteria outside the Sign Ordinance's specifications in granting or denying the agreement, the Sign Ordinance grants such officials unbridled discretion to approve or deny a sign permit application. Accordingly, Covenant states a claim in counts I, VII, VIII, IX, and X.

    4.    Procedural Safeguards

In count V of the complaint, Covenant asserts that the Sign Ordinance lacks procedural safeguards because the time limit specified is illusory. Section 11.3-3 of the Sign Ordinance requires the Zoning Administrator to take formal action on a permit application within thirty days of the date on which the application was filed. Pursuant to § 3.9 of the Zoning Ordinance, § 11.3-6 sets forth the appeals process for instances in which a sign permit is denied or the Zoning Administrator failed to take formal action on a sign permit application within the allotted time period. Section 3.9-3 of the

17

Zoning Ordinance allows an appeal to be taken to the Zoning Board of Appeals by any person aggrieved by a decision of the Zoning Administrator within thirty days after the alleged erroneous order, decision, or interpretation.

Covenant, however, maintains that the unbridled discretion afforded to City officials allows such officials to require additional, unspecified information before determining if a sign application is complete, thereby rendering the Sign Ordinance's stated deadlines illusory. For example, § 11.3-3 requires the approval of the City Council and subsequent signature by the mayor of any agreement for a billboard permit without establishing a deadline by which the City Council or mayor must act. Similarly, the appeals process does not require the Zoning Board of Appeals to take action within any specified period.[11]

Because the City Council and mayor possess unduly broad discretion in deciding whether or not to grant or deny a billboard permit application, the Sign Ordinance must "contain adequate standards to guide the official[s'] decision and render it subject to effective judicial review." *Thomas*, 534 U.S. at 323. Where, as here, the Sign Ordinance lacks specified deadlines by which the City Council and mayor must decide whether to give consent to a billboard permit application, the possibility exists that "City officials could potentially delay the processing of certain permit applications and thereby arbitrarily suppress disfavored speech." *Granite State Adver., Inc.* v. *City of St. Petersburg*, 348 F.3d 1278 at 1282 (11th Cir. 2003) (lack of time limits in a content-neutral ordinance is constitutionally acceptable where city officials may not exercise unlimited discretion).

---

[11]The City cites 735 ILCS5/3-103 as offering "prompt judicial review. 735 ILCS 5/3-103 states, in part: "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of a summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." Review of a final administrative decision of the Zoning Board of Appeals by the courts, however, is distinct from a specified period in which the Zoning Board of Appeals must act to render a decision on a ruling by the Zoning Board with regard to the grant or denial of a sign permit.

A factual record must be developed before the court can determine whether "a pattern of unlawful favoritism" exists. *Id.* Thus, Covenant states a claim that the Sign Ordinance lacks adequate safeguards in count V.

5.      Covenant's Equal Protection and Due Process Claims and "As Applied" Challenge

In count II, Covenant asserts that the Sign Ordinance favors the speech of certain groups and organizations while prohibiting speech by other entities in violation of Covenant's right and the rights of third parties to equal protection under the law. Covenant claims in count III that it was denied due process because it was not allowed to benefit from the different procedures that the City afforded to its favored entities. In Count XII, Covenant asserts that the Sign Ordinance is unconstitutional as it was applied to Covenant. The court defers any decision regarding the merits of these claims until a factual record is developed and substantive arguments are raised. The court, therefore, denies the City's motion to dismiss these claims.

6.      Severability

The City argues that any unconstitutional provisions of the Sign Ordinance must be severed from the remaining constitutional provisions. In determining whether an unconstitutional provision is severable from the remainder of the ordinance, the court must decide whether the ordinance would have been enacted if it had not included the unconstitutional provisions. *See United States* v. *Jackson*, 390 U.S. 570, 586 n.27, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968). Because the court's inquiry was limited to determining whether Covenant stated a claim, the court did not address each constitutional challenge to the Sign Ordinance raised by Covenant. The court defers any decision regarding severability until there is a final determination as to the constitutionality of all the challenged provisions.

19

## ORDER

For the reasons stated above, the court denies the City's Motion to Dismiss [#9]. Defendants

have until June 28, 2005 to answer the complaint.

ENTER:_____

JOAN HUMPHREY LEFKOW
United States District Judge

DATED: June 8, 2005