UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COVENANT MEDIA OF ILLINOIS, L.L.C, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 8130 |
| vs. ) | |
| ) | Judge Joan H. Lefkow |
| CITY OF DES PLAINES, ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the court is plaintiff Covenant Media of Illinois, L.L.C.'s ("Covenant"), motion for a preliminary injunction against defendant City of Des Plaines, Illinois ("City"), to enjoin the City from enforcing its Sign Ordinance. For the reasons stated below, the court grants Covenant's motion.

### I. FACTS

#### A. Sign Ordinance

At issue in the present litigation is the City's Sign Ordinance, which is contained in Article 11 of the City's Zoning Ordinance. The Sign Ordinance is a comprehensive scheme that regulates the content, permitting, placement, number, size, height, design, operation, and maintenance of signs within the City.[1] The Sign Ordinance makes it unlawful to erect a non-exempt sign without first obtaining a permit from City officials. *See* § 11.3-7. The Sign Ordinance also requires a permit for

---

[1] The Sign Ordinance defines "sign" as "[a]ny object, device, or structure, or part thereof, which is used to advertise, identify, display, direct, or attract attention to an object, person, institution, organization, business, product, service, event or location by any means, including words, letters, figures, designs, symbols, fixtures, colors, illumination, or projected images." § 13.3.

each billboard. *See* §§ 11.3-1, 11.3-3(C).

The Sign Ordinance provides that the Zoning Administrator shall take formal action on a fully complete sign permit application within 30 days. It further specifies that "[u]pon receipt of a fully complete sign permit application, the Zoning Administrator shall examine the application and all material attached thereto to determine its compliance with this Article, as well as any other applicable City Code, ordinance, or law." § 11.3-3(a). The Sign Ordinance also includes a process through which unsuccessful applicants may appeal the denial of their applications to post signs. According to its stated purpose, the Sign Ordinance exists to preserve the non-commercial character of residential neighborhoods, to provide reasonable yet appropriate conditions for identifying businesses and services, to reduce traffic hazards, and to protect the health, safety and general welfare of the City's residents. *See* § 11.1.

**B.     Parties**

Covenant engages in the business of posting and operating advertising signs and billboards used by businesses, churches, organizations, and individuals to disseminate both commercial and non-commercial messages. The City is a political subdivision of the State of Illinois located in Cook County.

After expending resources while investigating various sign locations in the City, Covenant entered into agreements with third-parties to post and operate signs within the City. Covenant applied to the City for permission to post and operate one sign, specifically a billboard or off-premises sign, on November 16, 2004. The City denied Covenant's application as submitted by a letter dated November 19, 2004. The City has not allowed Covenant to post its proposed sign.

Covenant did not appeal the denial of its billboard application through the Sign Ordinance's

appeals process and, instead, filed this lawsuit challenging the constitutionality of the Sign Ordinance in its entirety, both facially and as applied to Covenant. Specifically, Covenant alleges that the Sign Ordinance is unconstitutional because it grants City officials an impermissible level of discretion to approve or deny signs (count I); it violates equal protection (count II); it violates due process because of its vagueness (count III); it favors commercial over non-commercial speech (count IV); its permit requirements lack necessary procedural safeguards (count V); it impermissibly discriminates among non-commercial messages (count VI); it prohibits far more speech than can be justified by the interests asserted by the City (count VII); it does not directly advance any governmental interests in a material way (count VIII); its regulations are not narrowly tailored and do not leave open ample alternatives to advertising signs (count IX); it unduly burdens the ability of citizens and property owners to engage in protected First Amendment activity using fundamental means of communication (count X); it impermissibly favors some commercial topics at the expense of others (count XI); it is unconstitutional as applied to Covenant (count XII); and it is unconstitutional as applied to third parties under the overbreadth doctrine (count XIII). Count XIV contains Covenant's request for injunctive relief.

### C. Previous Proceedings

On June 8, 2005, this court issued a Memorandum Opinion and Order denying the City's motion to dismiss Covenant's challenge to the constitutionality of the City's Sign Ordinance. *See Covenant Media of Ill., L.L.C. v. City of Des Plaines*, No. 04 C 8130, 2005 U.S. Dist. LEXIS 11713 (N.D. Ill. June 8, 2005). The court conducted a preliminary evaluation of the constitutionality of the City's Sign Ordinance and determined that Covenant has standing to challenge the Sign Ordinance, both as applied to it and, under the overbreadth doctrine, to third parties, *see* Slip. Op. at 8-9, and

that the lawsuit is ripe for judicial review. Slip. Op. at 10.

The court also found that the Sign Ordinance contained some content-based restrictions, and, as a result, Covenant stated a claim that the Sign Ordinance unconstitutionally favored commercial speech over non-commercial speech, impermissibly discriminated among non-commercial messages, and impermissibly favored some commercial topics at the expense of others. Slip. Op. at 13-14. Additionally, the court found that Covenant stated a claim that the Sign Ordinance is overbroad as a result of the ordinance's failure to specify criteria that should be used in determining whether a sign contains "obscene, indecent, or immoral matter" or define those terms. Slip. Op. at 15. The court further found that the Sign Ordinance granted officials unbridled discretion to approve or deny a sign permit application, Slip. Op. at 16-17, and that Covenant had stated a claim that the Sign Ordinance lacks adequate procedural safeguards. Slip. Op. at 18-19.

Covenant filed the present motion for a preliminary injunction on June 22, 2005. Because the court recognized the problems inherent in granting what the court considered to be a well-founded motion for a preliminary injunction, the court ordered the parties to file a joint status report discussing whether the City intended to amend the Sign Ordinance. The parties complied with this order, submitting their joint status report on September 8, 2005. According to the joint status report, the City enacted an Amended Ordinance on August 29, 2005.

### D. Amended Sign Ordinance

By enacting the Amended Sign Ordinance, the City remedied many of the defects identified by the court in its Memorandum Opinion and Order. The Amended Sign Ordinance eliminates the distinction between corporate flags and government flags from all other flags and exempts flags generally from the permitting requirements of the Sign Ordinance. *See* § 11.3-7(E). The Amended

Sign Ordinance also has eliminated the provision prohibiting signs from displaying "obscene, indecent, or immoral matter." Section 11.2(C) now expressly allows non-commercial, off-premises signs subject to applicable size, height and other restrictions. Section 11.2(a) clarifies that the content of proposed signs is to be reviewed only to determine if the proposed sign meets the requirements for obtaining a permit. Section 11.3-3 clarifies that the requirements of § 11.6 apply to the issuance of billboard permits. The Amended Sign Ordinance also eliminates the requirement that all signs requiring a permit be located on the premises that they serve. Section 3.9-4(C)(1) was amended to include a thirty-day time limit for the Zoning Board of Appeals to hold public hearings on applications of the decision of the Zoning Administrator. Section 11.6(B) also was amended to specify that all twelve permits allowing outdoor advertising structures have been allocated.

## II. PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Ind. Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001). To grant a motion for preliminary injunctive relief, the court must find that the moving party (1) has at least a reasonable likelihood of success on the merits; (2) has no adequate remedy at law; and (3) will be irreparably harmed if the injunction does not issue. *Id.* If the moving party demonstrates these elements, the court must balance the threatened injury to the moving party with the threatened harm the injunction may inflict on the nonmovant. *Id.* The court also must consider the public interest in either the grant or denial of the injunctive relief. *Id.*

## III. ANALYSIS

### A. Likelihood of Success on the Merits

"When a party seeks a preliminary injunction on the basis of a potential First Amendment

5

violation, the likelihood of success on the merits will often be the determinative factor." *Joelner* v. *Village of Wash. Park*, 378 F.3d 613 at 620 (7th Cir. 2004) (citations omitted).

In this case, Covenant asserts that injunctive relief remains necessary and proper even after the Sign Ordinance was amended because the Amended Sign Ordinance grants unbridled discretion to City officials to approve or deny billboard applications and lacks procedural safeguards, thereby constituting an unconstitutional prior restraint on the exercise of First Amendment rights.

It is undisputed that the posting of signs and billboards constitutes expressive conduct within the ambit of the First Amendment. Therefore, the activities for which Covenant seeks a permit are presumptively protected by the First Amendment. It is also well-established that any permit or license requirement for an activity related to expression must contain narrow, objective, and definite standards to guide the licensing authority. *Shuttlesworth* v. *Birmingham*, 394 U.S. 147, 150-51, 22 L. Ed. 2d 162, 89 S. Ct. 935 (1969). Although a prior restraint on expressive conduct is not *per se* unconstitutional, any system of prior restraint that comes before the court bears a heavy presumption against its constitutional validity. *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U.S. 546, 558, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975).

In *Lakewood* v. *Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 100 L. Ed. 2d 771, 108 S. Ct. 2138 (1988), the Supreme Court recognized that a licensing scheme that places "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." The Court also has held that "a prior restraint that fails to place limits on the time within which the decision-maker must issue the license is impermissible." *Freedman* v. *Maryland*, 380 U.S. 51, 59, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965). In *Freedman*, the Supreme Court struck down a Maryland motion picture censorship statute on the ground that it was an unconstitutional

6

prior restraint. The Court then promulgated procedural safeguards to ensure expeditious decision-making in a censorship system, which were later summarized as follows: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review must be available; and (3) the censor must bear the burden of going to court to suppress the speech and bear the burden of proof once in court." *FW/PBS, Inc.* v. *City of Dallas*, 493 U.S. 215, 239, 107 L. Ed. 2d 603, 110 S Ct. 596 (1990), citing *Freedman*, 380 U.S. at 58-60. The Supreme Court extended its rationale from *Freedman* to licensing schemes in *Riley* v. *Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 at 802, 101 L. Ed. 2d 669, 108 S. Ct. 2667 (1988), holding that a licensing scheme that fails to provide for definite limitations on the time within which the licensor must issue the license was constitutionally unsound because "delay compelled the speaker's silence."

1. Discretion Given to City Officials By Content-Neutral Regulations

As the court recognized previously, "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression. Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." Slip. Op. at 16, quoting *Thomas* v. *Chicago Park Dist.*, 534 U.S. 316 at 323, 151 L. Ed. 2d 783, 122 S. Ct. 775 (2002). Although the City remedied many of the court's concerns in its Amended Sign Ordinance, the City kept intact its provisions granting unbridled discretion to City officials to approve or deny permit applications.

Specifically, the Amended Sign Ordinance does not alter the provision requiring that the City Manager "negotiate an agreement, on such terms, conditions and locations as is appropriate, including but not limited to, a licensing fee of $15,000.00 per sign payable on completion of

7

construction and other financial considerations to the City as the City Manager deems appropriate." *See* § 11.3-3. It does not define what is "appropriate" or what "other financial considerations" the City Manager may consider. The Amended Sign Ordinance does not change the provision specifying that "[u]pon receipt of a fully complete sign permit application, the Zoning Administrator shall examine the application and all material attached thereto to determine its compliance with this Article, as well as any other applicable City Code, ordinance, or law." *Id.* The Amended Sign Ordinance does not specify the criteria that the City Council and mayor must use in deciding whether or not to approve the agreement reached by the City Manager for a billboard permit.[2] Nothing in the Amended Sign Ordinance even requires the City Council or mayor to state the reasons for the approval or denial of a permit agreement. *Cf. Lakewood*, 486 U.S. at 753 (ordinance required mayor to specify reasons for denying applications for newsrack permits). The Amended Sign Ordinance has provided, however, that "[e]xcept where needed to determine if a sign meets the requirements set forth in this Article, the content of proposed signs is irrelevant and is not to be considered by any City official or employee in any government action or permit review." § 11.3-3.

While the Amended Sign Ordinance now includes language prohibiting City officials from impermissibly relying on the content of proposed signs to approve or deny permit applications, it continues to lack adequate safeguards to prevent City officials from doing precisely that in granting

---

[2] The City contends that "the City Planning Commission and the Mayor are likewise limited by the requirements of the Ordinance," but does not cite to any objective requirements within the statute to establish that contention. *See* City of Des Plaines' Response to Plaintiff's Motion for Preliminary Injunction at 10. While the City is correct that nowhere in the Sign Ordinance are government officials permitted to grant or deny a permit application on the basis of the proposed content and, in fact, they are now prohibited from doing so expressly, there are no objective standards to guide the discretion of the mayor, City Manger, or City Council in approving or denying permit applications. *Cf. Thomas*, 534 U.S. at 323-24 (content-neutral ordinance satisfied First Amendment concerns where the park district (1) could only deny application for one or more of the reasons set forth in the ordinance, (2) must process applications within 28 days, and (3) must clearly explain its reasons for denials ).

8

or denying permit applications. As this court stated in its Memorandum Opinion and Order, "the lack of specificity in the procedure and the amount of discretion vested in the official[s] lends itself to manipulation by the City. We cannot presume that officials will act in good faith and follow standards not explicitly contained in the ordinance." Slip. Op. at 17, quoting *Weinberg v. City of Chicago*, 310 F.3d 1029 at 1046 (7th Cir. 2002). Thus, Covenant has established a likelihood of success on the merits of its claim that the Amended Sign Ordinance constitutes an unlawful prior restraint on its First Amendment rights of free speech because it grants City officials unbridled discretion to approve or deny a permit application.

2. Procedural Safeguards

Just as the Amended Sign Ordinance failed to correct the defects identified by the court with regard to the discretion afforded to City officials, the Amended Sign Ordinance failed to remedy a gap in its procedural safeguards. The Amended Sign Ordinance has clarified that the Zoning Board of Appeals has a thirty-day period in which to hold public hearings on applications following the decision of the Zoning Administrator. Notwithstanding this clarification, the Amended Sign Ordinance does not specify a period of time in which the City Council or mayor must act to approve or deny any billboard agreement. *See* § 11.3-3. The Amended Sign Ordinance also fails to specify the time period within which the City Manager must negotiate an agreement for a billboard permit or within which the Electrical Inspector must review and approve an application in which electrical wiring and connections are to be used. *See id.* The possibility exists that "City officials could potentially delay the processing of certain permit applications and thereby arbitrarily suppress disfavored speech." *Granite State Adver., Inc. v. City of St. Petersburg*, 348 F.3d 1278 at 1282 (11th Cir. 2003). *See also 3708 North Avenue Corp. v. Village of Stone Park*, No. 94 C 7267, 1996 WL

82465, at *4-5 (N.D. Ill. Feb. 23, 1996) (holding unconstitutional a licensing scheme that failed to contain any of the procedural safeguards required by *Freedman*). Thus, Covenant has demonstrated a likelihood of success on its claim that the Amended Sign Ordinance is an unconstitutional prior restraint on protected First Amendment expression because its permitting scheme lacks adequate procedural safeguards.

3. $15,000 Licensing Fee

Covenant also argues that the $15,000 licensing fee is an unconstitutional prior restraint on speech. As noted by Covenant, this $15,000 fee is independent of the $500 permit application fee and the $3,000 yearly inspection fee imposed by the City. *See* § 11.3-3. The City bears the burden of establishing that its licensing fee is reasonably related to its costs in administering the permit. *See South-Suburban Housing Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868, 898 (7th Cir. 1991) ("Since the City must justify restrictions on commercial speech, and the cost of a permit must be reasonably related to the City's cost in administrating the same, [the City] was required to carry the burden of establishing that its permit fee . . . is not excessive and did not exceed the City's costs in enforcing its . . . regulations").

In response to Covenant's motion for a preliminary injunction, the City offered no evidence as to its costs in enforcing its permitting regulation and merely asserted that its billboard licensing fee is reasonably related to its interests of promoting safety and the welfare of citizens and in regulating the competing uses of public forums. There is no evidence as to the City's actual costs of enforcing its billboard restrictions. In addition, since the City has a separate application fee and yearly inspection fee, it appears highly unlikely that the $15,000 licensing fee bears any relation to its costs. Accordingly, the court finds that Covenant has demonstrated a likelihood of success on

its claim that the $15,000 licensing fee constitutes an unconstitutional prior restraint on speech.

### 4. Content-Neutral Regulation of Signs

In the Amended Sign Ordinance, the City deleted or otherwise altered the provisions of the Sign Ordinance that regulated speech based on its content. *See* §§ 11.3-7(E) (exempting flags from permitting requirements in Amended Sign Ordinance), 11.2(I) (prohibiting signs displaying "obscene, indecent, or immoral matter" deleted from Amended Sign Ordinance). Additionally, the Amended Sign Ordinance expressly permits non-commercial off-premises signs, subject to applicable size, height, and other similar restrictions. *See* § 11.2(C).

These amendments moot many of the objections raised by Covenant in its motion for a preliminary injunction. *See* Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction at 4-5. Specifically, these amendments moot Covenant's objections based on the Sign Ordinance's (1) exemptions for government flags and corporate flags; (2) implicit ban on signs not specifically permitted; and (3) prohibition of signs of an "obscene, indecent, or immoral matter" without defining such terms. In addition, the court already considered and rejected Covenant's arguments with regard to many of the exemptions contained in § 11.3-7 of the Sign Ordinance. *See* Slip. Op. at 13. The exemptions contained in § 11.3-7, including exemptions for public service signs, public information signs, time and temperature signs, historical identification signs, and real estate signs, do not regulate based on a particular viewpoint or favored cause. *Id.*, citing *Weinberg v. City of Chicago*, 310 F.3d 1029 at 1037. They also do not alter an otherwise content-neutral ordinance. *Id.*, citing *Scadron v. City of Des Plaines*, 734 F. Supp. 1437 at 1445-46 (N.D. Ill. 1990), aff'd 982 F.2d 502 (7th Cir. 1993). As a consequence, the court finds that Covenant has failed to demonstrate a likelihood of success on its claims that the Amended Sign Ordinance

11

unconstitutionally favors commercial speech over non-commercial speech, impermissibly discriminates among non-commercial messages, and impermissibly favors some commercial topics at the expense of others.[3]

   5.   Severability

Despite amending its Sign Ordinance, the City maintains that the court may sever any isolated, unconstitutional provisions from the remainder of the Sign Ordinance. Severability of a local ordinance is a matter of state law. *Lakewood*, 486 U.S. at 772. Under Illinois law, the court must consider whether the provisions of a statute that the court has not declared invalid may be given effect independently, without doing violence to the legislative intent in passing the legislation. *Best v. Taylor Machine Works*, 689 N.E.2d 1087 at 1100-01, 179 Ill.2d 367 (Ill. 1997). If the invalid portions cannot be severed from the remainder of the statute, the legislation is void in its entirety. *Id.* at 1101. *See also City of Chicago Heights v. Public Service Co. of Northern Ill.*, 97 N.E.2d 807 at 811, 408 Ill. 604 (Ill. 1951) ("[W]here a portion of a statute or ordinance is valid and a portion invalid, and the court cannot say that the legislative body would have passed the enactment with the invalid portion eliminated, the entire statute must be held invalid."). In addition, the presence of a severability clause within the statute is not conclusive on the issue of legislative intent. *Id.* It is viewed instead as a rebuttable presumption of legislative intent. *Id.*

In this case, the Amended Sign Ordinance has established a system to regulate the posting of signs and billboards through the issuance of permits and the imposition of fees to cover the costs of regulation and supervision. Additionally, the Amended Sign Ordinance requires that the City

---

[3]While Covenant has not identified any content-based regulations contained in the Amended Sign Ordinance, this decision does not foreclose the possibility that Covenant may later identify content-based regulations of speech contained in the Amended Sign Ordinance.

Manager, City Council, and mayor all participate in the process and approve negotiated agreements before issuing permits to post billboards. In light of the importance of the fees and the approval of City officials, the court cannot conclude that the City would have passed the Sign Ordinance without the unconstitutional provisions, especially after City officials failed to alter these sections in the Amended Sign Ordinance. As a consequence, the court finds that Covenant has demonstrated a likelihood of success in establishing that the Amended Sign Ordinance is null and void in its entirety.

### B.     Adequacy of Legal Remedy and Irreparable Injury

Having established a likelihood of success in establishing the unconstitutionality of the Amended Sign Ordinance, Covenant also succeeds in meeting the second and third prongs of the preliminary injunction standard. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, . . . and money damages are therefore inadequate." *Joelner*, 378 F.3d at 620 (citations omitted). Moreover, "there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties." *Id.* (internal quotations and citations omitted).

### C.     Balance of Harms and Public Interest

Covenant also has established that the balance of harms weighs in favor of granting the preliminary injunction and that the public interest is best served by enjoining the enforcement of an unconstitutional sign regulation. While the City has an interest in regulating aesthetics and promoting the health, safety, and welfare of its residents, Covenant has a substantial interest in asserting its First Amendment rights. "Preventing a party from engaging in First Amendment protected activities creates a greater harm to that party than it does to the City enforcing its

13

ordinances," and "the public interest is clearly served by strong and vigorous protection of the First Amendment." *Ayers* v. *City of Chicago*, 966 F. Supp. 701 at 719 (N.D. Ill. 1997). Moreover, "governmental compliance with the First Amendment always serves the common good. . . ." *Wil-Kar, Inc.* v. *Village of Germantown*, 153 F. Supp. 2d 982 at 982 (E.D. Wis. 2001). The City has demonstrated an ability and willingness to remedy constitutional defects in its Sign Ordinance, and it remains free to adopt new ordinances or regulations consistent with the First Amendment.

## ORDER

For the reasons stated above, the court grants Covenant's motion for a preliminary injunction [#23]. The City is enjoined from enforcing its Amended Sign Ordinance as contained in Article 11 of the City's Zoning Ordinance during the pendency of this suit.

ENTER:

Dated: September 15, 2005

JOAN HUMPHREY LEFKOW
United States District Judge