# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| COVENANT MEDIA OF ILLINOIS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 8130 |
| vs. | ) | |
| | ) | Judge Joan H. Lefkow |
| CITY OF DES PLAINES, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

More than two years ago, plaintiff, Covenant Media of Illinois, L.L.C. ("Covenant"), filed a fourteen-count complaint against defendant, City of Des Plaines, Illinois ("the City"), challenging the constitutionality of the City's sign ordinance ("the Sign Ordinance"). Through the course of the litigation, this court identified a number of constitutional defects in the Sign Ordinance and the City twice amended its ordinance in an effort to cure those defects. Apparently, Covenant is satisfied that the current version of the sign ordinance is constitutional, and the parties now dispute only whether the case is moot and whether Covenant has standing to pursue the litigation. Presently before the court is the City's motion for summary judgment. For the reasons stated below, the motion is granted.

## BACKGROUND

Covenant is an Illinois limited liability company in the business of erecting and operating advertising signs for businesses, churches, organizations, and individuals to communicate

commercial and non-commercial messages.[1] The City is a municipal corporation and political

subdivision of the State of Illinois located in Cook County.

As of February 2004, the City had adopted an ordinance limiting, among other things, the

use and erection of billboards within the City. The purpose of the ordinance was to "regulate and

control the use and development of land within the City of Des Plaines." More generally, "it

[was] designed to promote the public health, safety, and general welfare ..." of the City's

residents. Among other restrictions, section 11.6(B) of the Sign Ordinance limited the placement

of billboards within certain zoning districts and within 660 feet of Interstate Highways 90 and

294 ("the Interstate Highways"). Section 11.3-3(A) required the Zoning Administrator to

examine a permit application and its accompanying materials to determine its compliance with

the Sign Ordinance as well as any other applicable City Code, ordinance, or law once a complete

application had been submitted. Section 11.3-3(C) required the City Manager to "negotiate an

agreement, on such terms, conditions and locations as is appropriate, including but not limited to,

a licensing fee of $15,000.00 per sign payable on completion of construction and other financial

considerations to the City as the City Manager deems appropriate." Section 11.3-3(C) further

required the City Council to approve the agreement reached by the City Manager for a billboard

permit and the Mayor to sign the agreement.

On November 16, 2004, Covenant submitted an application to erect a billboard.

---

[1]The material facts concerning the dispute are essentially undisputed. Where inferences must be
drawn from the facts, the court views the facts in a light most favorable to Covenant, under the provisions
of Rule 56, Fed. R. Civ. P. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91
L. Ed. 2d 202 (1986), citing *Adickes* v. *H.S. Kress & Co*, 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1608-09,
26 L. Ed. 2d 142 (1970) ("The evidence of the non-movant is to be believed, and all justifiable inferences
are to be drawn in his favor.").

Covenant's application contemplated the erection of a billboard in a location more than 660 feet from the Interstate Highways and did not specify whether it would display commercial or non-commercial messages. By letter dated November 19, 2004, the City's Building Inspector sent the following letter to Covenant:

Re: Billboard Permit Application for 2100 E. Touhy Ave., Des Plaines, IL
Dear Mr. Miles:

The Building and Code Enforcement Division has reviewed your plans for the above improvement. Based on the information provided, the City must deny the permit request as submitted. In order for the permit to be further processed, the following items must be addressed and satisfactory correctional information must be resubmitted, including revised drawings and an item-by-item written reply to all comments.

1) This site must be approved by the Plan Commission and City Council by ordinance prior to the Issuance of a permit.
2) Approved [Illinois Department of Transportation ("IDOT")] permit is required.
3) Soil borings will be required.
4) Structural calculations must be legible and specific to sign and local soils.
5) Structural calculations must be signed by a structural Engineer.
6) Electrical plans must be submitted.
7) Plat of Survey is required.
8) Site plan is required.

Your permit will be on hold for thirty (30) days pending receipt of corrected, proper information. If you are unable to respond within this period of time, we will return your application and all other previously submitted materials to you. You may then re-apply at your convenience.

If you have any questions or if I may be of any further assistance, please feel free to contact me at (847) 391-5372.

Sincerely,
DEPARTMENT OF COMMUNITY DEVELOPMENT
Building and Code Enforcement
[SIGNED]
Al Biancalana, Jr.
Building Inspector

On December 16, 2004, Covenant filed the instant law suit challenging the constitutionality of the Sign Ordinance in its entirety, both facially and as applied to Covenant. On the same date, Covenant responded by letter to the City's November 19 letter denying its application. [2] In its letter, Covenant stated its belief that its application was already in compliance with the Sign Ordinance, explained its failure to submit certain materials identified in Biancalana's letter, and expressed willingness to comply with all reasonable requests for additional application materials. Covenant also attached to its letter a completed application for an IDOT permit, apparently in an attempt to persuade the City that such a permit was forthcoming, though it did not submit any evidence that it had actually filed the application with IDOT. Biancalana replied by letter on December 23, 2004, stating that Covenant had still either failed to submit the application materials identified in his November 19, 2004 letter or had submitted them in incomplete or improper form. Binacalana concluded:

> In order for the permit to be further processed, the following items must be addressed and satisfactory correctional information must be resubmitted including revised drawings

---

[2] The City contends that neither Biancalana's November 19, 2004 letter nor any of its subsequent written communications with Covenant regarding its applications constituted a "denial" of Covenant's request for a permit. Instead, the City maintains that its letters merely advised Covenant that its applications were incomplete. The court previously rejected this argument in its June 8, 2005 Memorandum Opinion and Order. [Docket No. 21]. *See Covenant Media of Ill., L.L.C. v. City of Des Plaines, Ill.*, 391 F. Supp. 2d 682, 695 (N.D. Ill. 2005) (stating that Biancalana's November 19, 2004 letter, which stated that "[b]ased on the information provided, the City must deny the permit request as submitted," constituted a conclusive response to Covenant's applications). In any event, even if Biancalana's letters were not a denial of Covenant's application when they were first issued, they became a final decision when Covenant failed to submit the required materials within the 30 day period provided for by the letters. *See* December 23, 2004 Biancalana Letter ("Your permit will be on hold for thirty (30) days pending receipt of corrected, proper information. If you are unable to respond within this period of time, we will return your application and all other previously submitted materials to you. You may then re-apply at your convenience."). Furthermore, this case has been pending for more than two years and the parties have not changed positions in a manner that could have moved them towards resolution through amendments to the application or other compromise. Accordingly, the court find that the application was denied.

4

and an item-by-item written reply to all comments.

1) Submit completed Plan Commission application....
2) Submit approved IDOT permit.
3) Submit soil borings of proposed location with permit application.
4) Submit legible structural calculations, specific to this sign, for review with permit application.
5) Electric plans shall be stamped by an Illinois licensed engineer.
6) Submit a Plat of Survey.
7) Site plan shall include dimensions from adjoining structures.[3]

During January 2005, Covenant submitted an additional 11 applications for sign permits,

all of which the City rejected as incomplete on February 10, 2005. Ten of Covenant's eleven

additional applications proposed locations more than 660 feet from the Interstate Highways. The

application for the 911 E. Touhy site proposed a location within 660 feet of the Interstate

Highways, but in an area zoned for single family residences. In order to further process these

applications, the City stated that each of the following items must be addressed and satisfactory

correctional information resubmitted:

1) A completed Application For Development Permit (for structure).
2) A completed Sign Permit Application.
3) A fully dimensioned site plan showing the location of the proposed billboard sign
4) A Plat of Survey.
5) Three sets of drawings signed and sealed by a currently licensed Illinois structural engineer or architect.
6) Structural calculations signed and sealed by a currently licensed Illinois structural engineer or architect.
7) An approved IDOT permit.
8) Soil borings signed and sealed by a currently licensed Illinois civil or structural Engineer.
9) A photometric footprint for any proposed illumination.
10) Plan Commission and City Council action is required to amend the current City.

---

[3]On February 1, 2005, Biancalana sent Covenant an "amended" version of the December 23, 2004 letter, adding the following advice: "Due to the lack of a site plan and plat of survey, this submission was not reviewed for zoning setback requirements. It will be reviewed upon submission of the site plan and plat of survey."

Zoning Code to create an approved site for this Billboard sign. Contact the Planning and Zoning Division for an application.

In its complaint, Covenant alleged that the Sign Ordinance was unconstitutional on a variety of grounds, as has been fully set out in previous decisions of this court and will not be repeated here. On June 8, 2005, the court issued a Memorandum Opinion and Order denying the City's motion to dismiss [Docket No. 21]. *See Covenant Media of Ill., L.L.C.* v. *City of Des Plaines, Ill.*, 391 F. Supp. 2d 682, 695 (N.D. Ill. 2005). In that decision, the court determined that Covenant had alleged facts sufficient to support standing to challenge the Sign Ordinance, both as applied to it and to third parties under the overbreadth doctrine, and that the lawsuit was ripe for judicial review. The court also concluded that the Sign Ordinance unconstitutionally favored commercial speech over non-commercial speech, impermissibly discriminated among non-commercial messages, and impermissibly favored some commercial topics at the expense of others. Additionally, the court held that Covenant stated a claim that the Sign Ordinance was overbroad as a result of its failure to specify criteria to be used in determining whether a sign contains "obscene, indecent, or immoral matter" or to define those terms. The court further concluded that the Sign Ordinance granted City officials unbridled discretion to approve or deny a sign permit application and that Covenant had stated a claim that the Sign Ordinance lacked adequate procedural safeguards.

On June 22, 2005, Covenant filed its Motion for Preliminary Injunction seeking to enjoin the City from continuing to enforce the sign restrictions. Following the parties' briefing on the motion, at the August 23, 2005 status hearing, the court provided the City an opportunity to decide whether to amend the Sign Ordinance before ruling on the motion. On September 8,

2005, the parties filed a joint status report, advising the court that the City had amended the Sign Ordinance ("the First Amended Sign Ordinance") on August 29, 2005.

The First Amended Sign Ordinance remedied many of the defects identified in the court's June 8, 2005 Memorandum Opinion and Order.[4] Because, however, the court determined, *inter alia*, that Covenant was likely to succeed on the merits of its argument that the First Amended Sign Ordinance, which retained the provisions granting unbridled discretion to City officials to approve or deny permit applications, constituted an unlawful prior restraint on Covenant's First Amendment right of free speech, this court granted Covenant's motion for a preliminary injunction against enforcement of the First Amended Sign Ordinance [Docket No. 43]. *See Covenant Media of Illinois, L.L.C. v. City of Des Plaines*, 2005 WL 2277313, *4 (N.D. Ill. Sept. 15, 2005).

On September 20, 2005, the City enacted the Second Amended Sign Ordinance, removing the provisions identified by the court as the basis for granting Covenant's request for injunctive relief. As a result, this court determined that the motion for preliminary injunction previously granted had become moot and declined to enter Covenant's proposed draft order for

---

[4]Specifically, the Amended Sign Ordinance eliminated the distinction between corporate flags and government flags from all other flags and exempted flags generally from the permitting requirements of the Sign Ordinance. *See* § 11.3-7(E). The Amended Sign Ordinance also eliminated the provision prohibiting signs from displaying "obscene, indecent, or immoral matter." Section 11.2(C) was amended to expressly allow non-commercial, off-premises signs subject to applicable size, height and other restrictions. Section 11.2(a) clarified that the content of proposed signs was to be reviewed only to determine if the proposed sign met the requirements for obtaining a permit. Section 11.3-3 clarified that the requirements of § 11.6 applied to the issuance of billboard permits. The Amended Sign Ordinance also eliminated the requirement that all signs requiring a permit be located on the premises that they serve. Section 3.9-4(C)(1) was amended to require the Zoning Board of Appeals to hold public hearings on applications within 30 days of the decision of the Zoning Administrator. Section 11.6(B) also was amended to specify that all twelve permits allowing outdoor advertising structures had been allocated.

injunction[5] [Docket No. 49].

The City now contends that it is entitled to summary judgment on all fourteen counts of Covenant's complaint. First, the City argues that this court lacks jurisdiction to hear this case because all of Covenant's claims are rendered moot by the enactment of the Second Amended Sign Ordinance. The City further claims that, even if Covenant's claims are not moot, Covenant lacks standing to bring an as-applied challenge to any provision of the Sign Ordinance other than those pursuant to which its applications were denied. Alternatively, the City maintains that, even if Covenant may challenge the entire Sign Ordinance, those provisions that actually caused the denial of Covenant's permit applications are constitutional because those provisions are valid content-neutral regulations, and any individually infirm provisions are severable. The City also contends that Covenant cannot facially challenge the Sign Ordinance because Covenant has not suffered any actual injury; any injury it has suffered cannot be traced to a unseverable, unconstitutional provision nor redressed by a favorable decision; and as a commercial advertiser it lacks sufficient interest in non-commercial speech to challenge provisions regulating non-commercial speech. Finally, the City claims that Covenant acquired no vested rights in a billboard permit, and therefore, it is not entitled to actual or nominal damages or attorneys' fees.

Covenant responds that the case is not moot because its claim for monetary damages presents a live case or controversy. Covenant also contends that it has standing to mount a comprehensive attack on the Sign Ordinance, both as applied to it and, under the overbreadth doctrine, to third parties because the Sign Ordinance contains provisions that grant City officials

---

[5]The Order at the end of the September 15, 2005 ruling purported to enjoin enforcement of the ordinance. Thereafter, Covenant submitted a proposed draft order compliant with Rule 65(d), Fed. R. Civ. P. [Docket No. 20].

unfettered discretion to grant or deny permits. Covenant further argues that its injuries are redressable because the provisions of the Sign Ordinance that the City relied on to reject its permit applications are constitutionally infirm and unseverable; the City's reference in this litigation to other provisions of the Sign Ordinance, the building code, and Illinois law as a basis for its denial is an untrustworthy *post-hoc* rationalization; and, regardless, none of those provisions and laws prohibit the erection of Covenant's billboards.

## I.    Mootness

Under Article III of the Constitution, federal courts have jurisdiction over cases and controversies. A case becomes moot, however, "when the dispute between the parties no longer rages, or when one of the parties loses his personal interest in the outcome of the suit." *Holstein* v. *City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994). At the same time, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice [unless it is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of Earth, Inc* v. *Laidlaw Env. Services (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (internal quotation marks and citations omitted). "[T]he presumption in cases involving voluntary cessation by government officials, particularly where it appears that the municipality is attempting to refashion the challenged statute to pass constitutional scrutiny, is that the municipality does not intend to reenact the same or substantially similar unconstitutional provisions." *Lockridge* v. *Village of Alsip, Illinois*, 2005 WL 946880 (N.D. Ill. Apr. 18, 2005) (citing *Fed'n of Advertising Indus. Representatives, Inc.* v. *City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003).

9

Covenant concedes that its request for injunctive relief is mooted by the City's enactment of the Second Amended Sign Ordinance, but contends that the case as a whole is not moot because of Covenant's request for damages, attorneys' fees, and costs.[6] The City does not seem to contest the well-recognized rule that a defendant's change in conduct does not render a case moot where a claim for monetary damages remains.[7] *Buckhannon Bd. & Care Home* v. *W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608-09, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001); *see also Powell* v. *McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969) (although claim for injunctive relief was moot, a case or controversy still existed where the plaintiff requested declaratory relief and damages); *Crue* v. *Aiken*, 370 F.3d 668, 677-78 (7th Cir. 2004) (although request for injunctive relief was moot, the court had to consider the merits of the case since requests for declaratory relief and damages remained). Instead, the City argues that the case is moot because Covenant did not acquire a vested right in a permit by virtue of its applications under the Sign Ordinance, and thus, it has no claim for damages stemming from the

---

[6]Covenant does not argue that the Sign Ordinance is reasonably likely to be reenacted, and it did not amend its complaint to challenge the constitutionality of the Second Amended Sign Ordinance. Accordingly, the court considers only whether Covenant's claim for damages saves its case from being moot.

[7]If the City means to argue that a claim for damages under the extinct Sign Ordinance is insufficient to sustain a case or controversy, it is unpersuasive. *See* City's Reply Brief, at 3 The City quotes another sign ordinance case, *Get Outdoors II, L.L.C.* v. *City of Lemon Grove, Cal.*, 378 F. Supp. 2d 1232 , 1240 (S.D. Cal. 2005), which held that the plaintiff's claim for damages did not prevent a finding of mootness. That court quotes *Lewis* v. *Continental Bank Corp.*, 494 U.S. 472, 480, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990), for the proposition that where the basic dispute is no longer live, "reasonable caution is needed to be sure that mooted litigation is not pressed forward ... solely in order to obtain reimbursements of sunk costs." The "sunk costs" contemplated by *Lewis*, however, were not damages, but rather attorney's fees that were the byproduct of the suit itself. *See* 494 U.S. at 472 ("This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim[.]"). Thus, *Lewis* is not sound support for *Lemon Grove*'s conclusion that a claim for damages did not preclude a finding of mootness.

denial of its applications.

The City relies on *Get Outdoors II, L.L.C.* v. *City of Lemon Grove, Cal.*, 378 F. Supp. 2d 1232 (S.D. Cal. 2005), in support of its position. In *Lemon Grove*, the court found that under California law, a party has no vested right in a permit until the permit is issued and the permitee has performed substantial work and incurred substantial expense in reliance on it. *Id.* at 1240. Since it was undisputed that the plaintiff had never received a permit, and there was no evidence that the plaintiff had incurred substantial expense or performed substantial work in reliance on any such permit, the court found that the plaintiff did not have a vested right under the original sign ordinance entitling it to erect its proposed billboards even if it successfully challenged the ordinance. *Id.* On that basis, the court dismissed the plaintiff's claims as moot.

Other courts have employed a similar analysis, first declaring that a party may have a claim for damages if it has a vested property right under state law, then identifying the standard in the relevant jurisdiction, and finally evaluating whether the plaintiff had made the necessary showing. *Id. See also Nat'l Advertising Co.* v. *City of Chicago*, 788 F. Supp. 994 (N.D. Ill. 1991) (finding that a billboard applicant could not pursue a claim for damages, because under Illinois law, permits are privileges from which no vested property rights attach) (citations and quotations omitted); *Outdoor Media Group, Inc.* v. *City of Beaumont*, 374 F. Supp. 2d 881 (C.D. Cal. 2005) (plaintiff who had not obtained billboard permit had no claim for damages because under California law billboard erection rights do not vest until a permit issues and the permitee substantially relies on it by certain action); *Seay Outdoor Advertising, Inc.* v. *City of Mary Esther, Fla.*, 397 F.3d 943 (11th Cir. 2005) (finding billboard applicant's claims moot because it could not show under Florida law that it possessed a vested right in a permit).

Others, however, have not required plaintiffs to demonstrate that they had a vested right in a permit in order to maintain a claim for damages. *See Lockridge* v. *Village of Alsip, Ill.*, 2005 WL 670632 (N.D. Ill. March 22, 2005) (summarily concluding that what saved the plaintiff's claim from being moot was that it had requested damages and attorneys' fees and costs); *Covenant Media of Cal., L.L.C.* v. *City of Huntington Park, Cal.*, 377 F. Supp. 2d 828 (C.D. Cal. 2005) (finding plaintiff potentially entitled to compensatory or nominal damages based on prior enforcement of a since-repealed sign ordinance, even though plaintiff made no showing that it had a vested right in a permit); *Boulder Sign Co.* v. *City of Boulder City, Nev.*, 382 F. Supp. 2d 1190 (D. Nev. 2005) (finding plaintiff's claim for damages not moot even though it was never awarded a permit and made no showing that it substantially relied on one); *Covenant Media of Ill., L.L.C.* v. *City of Elgin, Ill.*, 2006 WL 573890 (N.D. Ill. March 6, 2006) (rejecting city's mootness challenge because billboard applicant was seeking damages for alleged harm resulting from denial of its applications). None of these cases makes any reference to vested rights so this court assumes that the defendants in those cases did not submit the vested rights argument presented here.[8] As a consequence, their instructive value is limited.

It appears, in any event, that the analyses in the cases cited above do not consider the relevant distinction that although a plaintiff must have a property (or liberty) interest in order to pursue a due process claim, a property interest is not necessary for a First Amendment claim. The protections of procedural due process extend only to deprivations of life, liberty and property interests protected by the Fourteenth Amendment. *See Board of Regents* v. *Roth*, 408 U.S. 564,

---

[8] It is noteworthy, though, that the *City of Huntington Park* court was likely aware of the *City of Beaumont* court's vested rights discussion, as the *City of Huntington Park* court cited that case, albeit on a different issue.

569-70, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Thus, in order to assert a claim for damages based on an alleged procedural due process violation, a plaintiff must indeed show a "legitimate claim of entitlement" to the claimed protected interest, or in this case, a vested right in a permit. *See Roth*, 408 U.S. at 577; *See also Boczar* v. *Kingen*, 2000 WL 1137713 (S.D. Ind. March 9, 2000). Similarly, since "[a] claim based on substantive due process must be based on the deprivation of an underlying protected life, liberty or property interest," the failure to show a protectable property interest is fatal to a substantive due process claim as well. *See Boczar*, 2000 WL 1136613, at *23 (citing *Jeffries* v. *Turkey Run Consol. School Dist.*, 492 F.2d 1, 3-4 (7th Cir. 1974). Because Covenant fails to assert a vested right under Illinois law, it cannot prevail on its claim for damages for alleged procedural and substantive due process violations, and those claims are therefore moot.

By contrast, the court has already found that various provisions of the Sign Ordinance were likely constitutionally infirm content-based regulations of free speech and that the provision granting City officials unbridled discretion to grant or deny permit applications perhaps constituted an unlawful prior restraint on Covenant's First Amendment rights, all without requiring a showing of a vested right in a permit. *Covenant Media*, 2005 WL 2277313 at *4. Covenant thus may seek to recover damages based on the City's past enforcement of the Sign Ordinance in violation of its right to free speech irrespective of whether it possessed a property interest in a permit. Accordingly, its claim for damages on these claims is not moot.

## II.   Standing

The doctrine of standing is another core component of Article III's case or controversy requirement. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed.

13

2d 351 (1992). To prove standing, a plaintiff must show (1) injury in fact, (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.* at 560-61.

A.    Covenant's As-Applied Challenge

The City argues that Covenant lacks standing to mount an as-applied challenge to the provisions of the Sign Ordinance because it cannot satisfy the injury in fact element. Specifically, the City contends that although the court previously found that Covenant had sufficiently pled that it was injured as a result of the denial of its permit application, Covenant has failed at the summary judgment stage of the proceedings to substantiate those allegations with affidavits or other evidence of specific facts.

The City's argument that Covenant has failed to comply with Local Rule 56.1 is certainly valid.[9] But as Covenant points out, courts have found that the denial of a plaintiff's application for a permit alone satisfies the injury in fact element of standing without a further showing of injury. *See Lockridge* v. *City of Oldsmar, Fla.*, 2005 WL 2785233 (M.D. Fla. Sept. 27, 2005); *Advantage Media, L.L.C.* v. *City of Hopkins*, 379 F. Supp. 2d 1030, 1036 (D. Minn. 2005). Thus, since the City denied Covenant's applications for a billboard permit, Covenant satisfies this element of standing.

Moreover, the record supports a finding of injury in fact. The City's own statement of

---

[9]For example, Covenant failed in its response to the City's statement of material facts to re-state or summarize the paragraphs to which its was responding and to identify materials in the record supporting its denials. In addition, Covenant failed to file a statement of additional material facts requiring the denial of summary judgment, instead opting to introduce new facts in its response to the City's statement of material facts, again often without citation to the record. *See*, e.g., LR 56.1 ¶¶ 8, 24, 78.

material facts, paragraphs 43 - 64, sets forth the time-, labor-, and resource-intensive efforts Covenant undertook to prepare its permit applications, and these same expenditures are further detailed in the declaration of Morgan Hudgens, one of Covenant's co-owners, submitted in support of Covenant's motion for a preliminary injunction and incorporated by reference into its response to the City's statement of material facts. As such, it is competent summary judgment evidence sufficient to defeat the City's contention that there is no evidence in the record demonstrating that Covenant was injured by the City's denial of its application.

The City next argues that Covenant lacks standing to mount an as-applied challenge because a decision in its favor would not redress its alleged injury. It relies on *Harp Advertising Illinois, Inc.* v. *Village of Chicago Ridge, Ill.*, 9 F.3d 1290 (7th Cir. 1993), which held that a plaintiff billboard advertiser lacked standing to challenge a village's sign ordinance because the signs it proposed to build were also prohibited by the village's zoning ordinance, which the plaintiff did not claim was invalid:

> [Harp] lacks standing to challenge either the sign code or the zoning code, because it could not put up its sign even if it achieved total victory in this litigation. Harp's proposed billboard would measure 20 by 60 feet. Yet village ordinance § 4-5-10-3(A) provides that no sign may have a face exceeding 200 square feet. Harp does not contest the validity of this ordinance; its proposed billboard, six times as large as Chicago Ridge allows, therefore will never appear. This litigation is irrelevant.

*Id.* at 1291 (citations omitted). Since the village could block the plaintiff's sign by enforcing another, valid, ordinance, the plaintiff had no claim for damages stemming from the village's enforcement of the allegedly unconstitutional sign ordinance. *Id.*

The City contends that two bodies of law independent of the Sign Ordinance would preclude the erection of Covenant's proposed billboards: IDOT regulations and the City's building code. Concerning the building code, the record viewed in a light most favorable to

Covenant does not establish that Covenant did not comply. The City contends that Covenant failed to file such required items as soil boring tests and electrical plans certified by an Illinois engineer. The only section of the building code identified by the City, however, is section 106.2, which merely provides,

> The construction documents submitted with the application for permit shall be accompanied by a site plan showing to scale the size and location of new construction and eliciting structures on the site, distances from lot lines, the established street grades and the proposed finished grades; and it shall be drawn in accordance with an accurate boundary line survey.

The court cannot infer the more onerous obligations suggested by the City from this straightforward provision.[10] As for the IDOT regulations, they would not preclude the erection of Covenant's billboards. As Covenant points out, the regulation at 92 Ill. Admin. Code § 522.30 merely provides that signs located within 660 feet of interstate highways may not be erected until a permit has been issued by IDOT. Since Covenant proposed to locate its billboards beyond the IDOT boundary, it correctly concludes that IDOT did not require it to obtain an IDOT permit.

The City next argues that, even if some other valid, enforceable law would not prohibit

---

[10]Even if Covenant was required to submit these items in order to obtain a permit under the City's building code, its submission of other items, such as construction engineering plans and computer-generated site plan sketches, as well as its expression of willingness to submit additional materials, is sufficient to demonstrate its intent to comply with the building code. As a consequence, the court cannot conclude that Covenant's proposed billboards would have been precluded even if the City had not denied its applications based on putatively unconstitutional provisions of the Sign Ordinance. *See Harp*, 9 F.3d at 1292 (plaintiff whose application was prohibited by ordinance's size restriction might have had standing if it had shown that it wanted to erect a sign complying with the ordinance in the event it could overcome other regulatory obstacles); *Lamar Advertising of Penn, L.L.C.* v. *Town of Orchard Park, New York*, 356 F.3d 365, 374 (2nd Cir. 2004) (plaintiff whose proposed signs exceeded town's sign ordinance's size limits nevertheless had standing because it alleged in its complaint that the permits it requested were part of a multi-phase plan to build signs of differing sizes, some within the ordinance's size limits).

the erection of Covenant's billboards, valid, severable provisions of the Sign Ordinance would. The City contends that section 11.6(B), which prohibits the erection of billboards not located within 660 feet of the Interstate Highways, justifies the denial of Covenant's applications.[11] Since it is undisputed that eleven of the twelve billboards proposed by Covenant are more than 660 feet from the Interstate Highways, the City contends that this provision would preclude Covenant from obtaining redress even if the remainder of the Sign Ordinance is invalidated. Covenant does not dispute that its application failed to comply with the Sign Ordinance's location restriction but argues that, since the City did not cite that deficiency in its denial letter, any effort to rely on it here is a *post hoc* rationalization that should be disregarded.[12]

It is unclear whether the City denied Covenant's applications because it proposed billboards in unapproved locations: the City did not explicitly cite Covenant's non-compliance with the location requirement as a basis for its decision, but did advise in the denial letters that "Plan Commssion and City Council action is required to amend the current City Zoning Code to create an approved location for this Billboard sign," which implicitly suggests that Covenant's applications did not comply with the location requirement since there was no suggestion that Covenant's proposed locations were inappropriate for any other reason than their distance from the Interstate Highways. Regardless, the City's present identification of Covenant's non-

---

[11]The parties agree that the application for a billboard to be located at 911 E. Touhy is within 660 feet of the Interstate Highways. That application is, therefore, subject to a separate analysis, which is set forth at footnote 18 of this opinion. "Covenant's applications" as used in this section thus refers only to the eleven applications for billboards located more than 660 feet from the Interstate Highways.

[12]The parties have framed the issue as whether Covenant can satisfy the redressabilty prong of the test for standing. The court follows that approach, but notes that it would be just as appropriate and lead to the same result if the issue were framed as one of causation.

17

compliance with the location requirement does not constitute an impermissible *post hoc* rationalization. There is nothing in the City's denial letters to suggest that the City intended them to be a complete and final statement regarding its evaluation of Covenant's applications' compliance with all relevant laws. In fact, the City's denial letters explicitly stated that, since Covenant's applications were incomplete, the City was denying Covenant's applications without fully considering them.[13] It would be unfair to regard the City's later identification of other deficiencies in Covenant's applications as *post hoc* rationalizations when the City expressly reserved the right to conduct a more thorough review of them once Covenant had submitted additional materials. To find otherwise would would force municipalities to conduct an exhaustive review of a prospective permittee's application no matter how incomplete and to make a hypothetical assessment of compliance with all relevant laws even where the application lacks information pertinent to that determination.

Other courts have similarly considered deficiencies in a billboard advertiser's application that were not specifically identified by a municipality at the time of its denial decision when evaluating the advertiser's standing. In *Lockridge*, 2005 WL 946880, *2, the city denied the plaintiff's applications for failure to comply with the city's sign ordinance requirements. On summary judgment, the city argued that some of the plaintiff's applications were also precluded by the city's zoning ordinance. The court agreed, and then presumed without discussing, that the city would have denied those applications on that basis even if the sign ordinance had not been in

---

[13]That approach is consistent with Section 11.3-3(A), which provides that "[u]pon receipt of a fully complete sign permit application, the Zoning Adminstrator shall examine the application and all material attached thereto to determine its compliance with the Article, as well as, any other applicable City Code, ordinance, or law."

effect. As a consequence, the court concluded that a decision invalidating the sign ordinance would not redress plaintiff's injury with respect to those applications since it would not have received a permit even in the absence of the sign ordinance. Similarly, in *Get Outdoors II, L.L.C. v. San Diego*, 381 F. Supp. 2d 1250 (S.D. Cal. 2005), the city denied the plaintiff's permit applications because they proposed new advertising display signs, but submitted in support of its motion for summary judgment the affidavit of a competent city official outlining additional deficiencies in the plaintiff's applications, including that none complied with the challenged sign ordinance's size restrictions. Since the plaintiff had failed to cite any authority requiring the city to list in its denial letter all of the reasons why an application is deficient, the court concluded that the plaintiff could not satisfy the redressability element of standing because its proposed billboards were too large and thus would never be approved even if other severable provisions of the sign ordinance were invalidated.[14]

In this case, there is no genuine issue that, even if the City did not initially deny Covenant's applications for failure to comply with the location restriction, it would have eventually. It is undisputed that Covenant's applications contemplated billboard locations more

---

[14]In *Midwest Media Property, L.L.C. v. Symmes Township, Ohio*, 2006 WL 2347489, at *3-*4 (S.D. Ohio May 22, 2006), the court agreed that courts can consider a deficiency in a plaintiff's application that was not expressly identified by the municipality at the time of its decision, but it limited that consideration to only those deficiences that the municipality could show actually motivated, at least in part, its denial of the plaintiff's application. In this court's view, evidence of "actual motivation" is unnecessary where there is no basis to find that the municipality would not enforce its sign ordinance regulations. If a municipality failed to reference a deficiency in a final and comprehensive review of a plaintiff's application, a court could perhaps infer that the City would not have denied the plaintiff's application on that basis, and therefore find that a favorable decision could redress the plaintiff's injuries. But no such inference arises from a municipality's failure to identify a particular deficiency during its initial, preliminary review of the plaintiff's application. Under those circumstances, unless the plaintiff presents evidence to the contrary, it is appropriate to presume that the municipality would enforce all of the provisions of its sign ordinance.

than 660 feet from the Interstate Highways and that such locations were prohibited by the Sign Ordinance. It would be unreasonable to presume that such an obvious defect in Covenant's applications would have been overlooked by the City; Covenant has presented no evidence to suggest that any City official had the discretion to simply waive the location requirement;[15] and though Section 3.6-2 of the Sign Ordinance authorized the City Council to grant major variations from the ordinance, Covenant has presented no evidence that it could have satisfied the standards and conditions imposed by the Zoning Ordinance to have qualified for a major variation. As such, even drawing all reasonable inferences in Covenant's favor, Covenant's applications would have been denied because they proposed billboard locations more than 660 feet from the Interstate Highways.

Covenant contends that Section 3.7, which empowers the City Council to amend the text of the Sign Ordinance, creates an issue of fact as to whether the City would have amended the Sign Ordinance to delete the location requirement or expand the definition of permissible areas in order to permit its proposed billboards. The fact that the City *could* have amended the Sign Ordinance is not by itself evidence that it *would* have. A contrary rule would allow any

---

[15]The court has previously described the discretion afforded City officials under Section 11.3-3 as "unbridled." *See* Docket #21, *Covenant Media*, 391 F. Supp. 2d at 695; Docket # 43, *Covenant Media*, 2004 WL 2277313, at *4. In the context of the court's discussion in those instances, the characterization was apt, as the Sign Ordinance lacked procedural safeguards to prevent City officials from enforcing a *de facto* content-based permit requirement by relying on the content of the proposed billboards when exercising their discretion to approve or deny an application. In contrast, in the present context, the issue is not whether the Sign Ordinance limited City officials' authority to add permit requirements, but rather whether it limited their authority to waive them. In this context, the City officials' discretion is not "unbridled," because it is circumscribed by Section 3.6, which sets forth the limited circumstances in which City officials may grant variances from the ordinance. As a consequence, Covenant's reliance on Section 11.3-3 to support its contention that the compliance with the location requirement was negotiable is unavailing.

applicant to get its case to a jury based on speculation alone. Likewise, the fact that the City Council has exercised its power to amend the Sign Ordinance on at least two occasions to increase the number of available permits is also insufficient to permit an inference that the City would not have strictly enforced the location requirement. Presumably, limitations on the number and location of billboards serve different purposes: the former to manage the impact of the billboards on motorists traveling on the Interstate Highways, the latter to minimize the intrusiveness of the billboards on the City's residents. Since only residents vote in City elections, the City Council would be confronted with a much different calculation when deciding whether to amend the Sign Ordinance to further impose on its residents. Thus, it simply cannot be inferred that because the City has seen fit to further populate the roadsides of the Interstate Highways that it would do the same to the City's open fields, residential lawns, and local thoroughfares. Moreover, an amendment to expand the permissible areas would have general significance and application, allowing all future applicants to take advantage of the relaxed location requirements. An amendment to increase the number of available permits, on the other hand, is more akin to a variance, since the City can easily ensure that only the applicant seeking the amendment benefits from it. For that reason, too, the City's history of amending the Sign Ordinance to increase the number of permits is not probative on the question of whether it would have amended the location requirements.

Finally, the fact that six billboards are presently located more than 660 feet from the Interstate Highways is inconsequential, because absent a showing that a City ordinance in effect at the time the applications for those billboards were filed was specifically amended to authorize the erection of a billboard in otherwise unapproved locations, there is no basis to infer that the

21

City does not consistently enforce the Sign Ordinance's location requirements. Furthermore, the City has put forth a non-pretextual justification for each of the billboards located outside of the 660 feet corridor along the Interstate Highways that conclusively rebuts Covenant's urged inference. According to the supplemental affidavit of David Wiltse, the City Attorney for the City, the six billboards located more than 660 feet from the Interstate Highways identified by Covenant were not erected pursuant to a variance granted under Section 11.3-3(C) of the Sign Ordinance, but rather as a part of a settlement agreement with Universal Outdoor in *Universal Outdoor* v. *City of Des Plaines*, Case No. 86 CH 7012, Circuit Court of Cook County, Illinois, which was finalized on July 14, 1989, nearly nine years before the enactment of the Sign Ordinance.[16][17]  Wiltse further avers that no applications were submitted for any of the six

---

[16]It is unclear whether a sign ordinance in effect at the time of the settlement agreement entered into between the City and Universal Outdoor restricted the erection of billboards located more than 660 feet from the Interstate Highways. Even if it did, though, the City's authorization of otherwise prohibited billboards as consideration for the dismissal of a law suit filed against it is not evidence of the type of scheme to coerce payment that Covenant alleges is at the root of the City's denial of its applications in this case.

[17]Covenant moved to strike Wiltse's supplemental affidavit, which was attached to the City's reply in support of its motion for summary judgment, arguing that the affidavit constituted new evidence not raised in the City's opening memorandum; alternatively, Covenant requested an opportunity to respond. Wiltse's supplemental affidavit directly responds to and rebuts the inferences urged by Covenant in response to the City's motion, and thus, it was properly submitted by the City in reply. Covenant's request for leave to respond to the affidavit is likewise without foundation, as Covenant had ample opportunity to discover whether the City had ever granted a variance to permit the erection of a billboard in an otherwise prohibited location, yet it elected to rely on nothing more than the bald assertion that the presence of six billboards in the City more than 660 feet from the Interstate Highways demonstrates that the City's reliance on the Sign Ordinance's location requirement is pretextual. As the party first raising the issue, Covenant was aware of its need to set forth competent evidence in support of its allegations. Having failed to do so, it cannot now be heard to complain simply because Wiltse's supplemental affidavit disposes of the issue. Furthermore, even if Covenant is entitled to an opportunity to respond, it has already had it and waived it. In its reply in support of its motion to strike, Covenant attacks other assertions made by Wiltse but presents no evidence or argument as to why Wiltse's averments regarding the City's settlement with Universal Outdoor should be disbelieved. Covenant's motion to strike this portion of Wiltse' supplemental affidavit is, therefore, denied. Covenant's motion to strike the remaining paragraphs of Wiltse's supplemental affidavit is denied as moot, as none of those

22

billboards, and no permit was issued. In light of these unrebutted averments, there is no evidence

in the record showing that the City Council has ever exercised its power to amend the Sign

Ordinance to allow billboards to be erected outside the permissible corridor along the Interstate

Highways as set forth in section 11.6(B) of the Sign Ordinance.

The court, therefore, concludes that the City has established as a matter of law that it

would have denied eleven of the twelve applications submitted by Covenant, at least in part,

based on the Sign Ordinance's prohibition on billboards located more than 660 feet from the

Interstate Highways.[18]

The next question is whether the Sign Ordinance provisions that the City would have

relied on to deny Covenant's applications are constitutional. "Time, place or manner"

restrictions "are valid provided that they are justified without reference to the content of the

regulated speech, that they are narrowly tailored to serve a significant governmental interest, and

that they leave open ample alternative channels for communication of the information." *Clark* v.

---

paragraphs figure in the court's decision.

[18]The 911 E. Touhy application was also prohibited by Section 11.6(B), though for a different reason. Section 11.6(B) provided that billboards were permitted only in areas zoned C-1, C-2, C-3, M-1, M-2 and I-1. It is undisputed that at the time Covenant submitted the application, the 911 E. Touhy location was zoned R-1 for "single family residences." Again, since there is no evidence that the City did not enforce this restriction, there is no basis to presume that the City would not follow its own laws and deny Covenant's applications on this basis. Accordingly, the court finds that, as a matter of law, Covenant would not have been able to obtain a permit for the 911 E. Touhy location.

Covenant asserts in its response to the City's statement of material facts that "[a]dvertising signs are perfectly allowable on non-Interstate roadways in Illinois and the zoning and use in 1959 is not all relevant *unless* the sign is adjacent to an Interstate." *See* Covenant's Response to the City's L.R. 56.1 Statement of Mat. Facts at ¶ 76 (emphasis in the original). Covenant fails to cite any support for this assertion, and thus, it is properly ignored. Regardless, the City could enforce the zoning classification restriction in this case even if it were true that the City's authority to restrict the placement of billboards to certain zoning classifications extended only to billboards located along Interstate Highways, as it is undisputed that the 911 E. Touhy application proposed a billboard within 660 feet of the Interstate Highways.

23

*Community for Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 2065, 82 L. Ed. 2d 221 (1984).
The location and zoning classification restrictions at issue in this case, when considered in
isolation from the remainder of the ordinance, are content-neutral, consistent with the Sign
Ordinance's stated purpose and intent of preventing over-development and encouraging the
compatibility between different land uses, and the Sign Ordinance preserves alternative channels
for billboard advertising by permitting the erection of billboards along the Interstate Highways.

Having now concluded that the City would have denied Covenant's applications because
of the location and zoning classification restrictions even in the absence of any of the other
provisions of the Sign Ordinance challenged by Covenant in this case, and that the location and
zoning classification restrictions are constitutional limitations on Covenant's First Amendment
rights, the court's only remaining task is to determine whether those provisions may be severed
from the remainder of the Sign Ordinance, portions of which the court has already found were
likely constitutionally infirm. *See Covenant Media of Ill., L.L.C.* v. *City of Des Plaines, Ill.*,
2005 WL 2277313, *7 (N.D. Ill. 2005). Covenant contends that the court has already found that
they may not. In the decision denying the City's motion to dismiss, the court expressly reserved
judgment on severability:

> "Because the court's inquiry was limited to determining whether Covenant stated a claim,
> the court did not address each constitutional challenge to the Sign Ordinance raised by
> Covenant. The court defers any decision regarding severability until there is a final
> determination as to the constitutionality of all the challenged provisions."

*Covenant Media of Ill., L.L.C.* v. *City of Des Plaines, Ill.*, 391 F. Supp. 2d 682, 695 (N.D. Ill.
2005). Following the enactment of the Amended Sign Ordinance, the court granted Covenant's
motion for a preliminary injunction, finding that Covenant was likely to prevail on its claim that

24

severance of the constitutionally infirm provisions was inappropriate:

> "In this case, the Amended Sign Ordinance has established a system to regulate the posting of signs and billboards through the issuance of permits and the imposition of fees to cover the costs of regulation and supervision. Additionally, the Amended Sign Ordinance requires that the City Manager, City Council, and Mayor all participate in the process and approve negotiated agreements before issuing permits to post billboards. In light of the importance of the fees and the approval of City officials, the court cannot conclude that the City would have passed the Sign Ordinance without the unconstitutional provisions, especially after City officials failed to alter these sections in the Amended Sign Ordinance. As a consequence, the court finds that Covenant has demonstrated a likelihood of success in establishing that the Amended Sign Ordinance is null and void in its entirety."

*Covenant Media of Ill., L.L.C.* v. *City of Des Plaines, Ill.*, 2005 WL 2277313, \*7 (N.D. Ill. 2005).

The court's finding was not final, however, rather just a forecast of what was likely to occur on final disposition, and it was predicated on the assumption that the City Council would not have passed the Sign Ordinance without the offensive provisions. That assumption has since been conclusively undermined by the enactment of the Second Amended Sign Ordinance, which eliminated those provisions. Accordingly, it is appropriate for the court to reconsider the issue of severability.

The severability of a local ordinance is a question of state law. *See Lakewood* v. *Plain Dealer Publishing Co.*, 486 U.S. 750, 772, 108 S. Ct. 2138, 100 L. Ed. 2d 771 (1988). Under Illinois law, the determination of whether an invalid section of an ordinance dooms the remainder of an ordinance is a question of legislative intent. "The settled and governing test of severability is whether the valid and invalid provisions of the Act are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently." *Waicekauskas* v. *Burke*, 336 Ill.

25

App. 3d 436, 441, 784 N.E.2d 280, 271 Ill. Dec. 62 (Ill. 2002) (citations, ellipsis, and internal quotation marks omitted). Here, it is clear from the City's amendments of the Sign Ordinance to remove the putatively unconstitutional provisions that it intended the location and zoning classification restrictions to stand by themselves. That conclusion is buttressed by the Sign Ordinance's severability clause, which, though not dispositive, alone establishes a presumption that the City intended the invalid provisions to be severed. *Id.*

Because the location and zoning classification restrictions are severable and independently enforceable, Covenant cannot demonstrate that it has suffered a redressable injury due to the City's denial of its application based, in part, on the putatively unconstitutional provisions of the Sign Ordinance. The City would have denied Covenant's applications either because they proposed billboards locations more than 660 feet from the Interstate Highways or in areas zoned for "single family residences." Since the enforcement of those constitutional provisions justifies the City's denial of Covenant's applications, Covenant was not deprived anything to which it was otherwise entitled. Covenant is, therefore, entitled neither to erect its proposed billboards nor to damages. As such, Covenant cannot satisfy the redressability element for standing. Accordingly, the court must dismiss Covenant's suit for lack of jurisdiction unless its facial standing stands.

B.     Facial Challenge

Covenant does not have Article III standing to assert the rights of third parties who may be affected by the putatively unconstitutional provisions of the Sign Ordinance. "To avoid chilling the speech of third parties who may be unwilling or unlikely to raise a challenge in their own stead, the overbreadth doctrine in certain circumstances permits litigants already before the court to challenge a regulation on its face and raise the rights of third parties whose protected

26

expression is prohibited or substantially burdened by regulation." *Schultz* v. *City of Cumberland*, 228 F.3d 831, 848 (7th Cir. 2000). A plaintiff asserting a facial overbreadth challenge must, however, still satisfy all of the constitutional standing requirements as to the statutory provision that it challenges. *See Harp*, 9 F.3d at 1291-92 (plaintiff advertiser lacked standing to facially challenge sign ordinance because its inability to erect billboard would not be redressed by a favorable decision since an unchallenged portion of the sign ordinance would prohibit its erection); *CAMP Legal Defense Fund, Inc.* v. *City of Atlanta*, 2006 WL 1623279, *12 (11th Cir. June 13, 2006) (rejecting contention that injury under one provision of a challenged sign ordinance confers standing on plaintiff to challenge all provisions of an allegedly unconstitutional ordinance).

In this case, Covenant can show neither that the injury it suffered as a result of the denial of its applications is causally connected to the provisions of the Sign Ordinance it challenges nor that a favorable decision would redress its injury. The court has already concluded that the City would have denied Covenant's applications because it does not permit the erection of billboards more than 660 feet from the Interstate Highways or in residential zoning districts. While Covenant asserts that the City's decision was based on Covenant's election not to participate in the Sign Ordinance's discretionary approval process or to seek a text amendment under Section 3.7, there is no evidence in the record to support those allegations. Covenant is thus unable to demonstrate either a causal nexus between its injury and the provisions of the Sign Ordinance it challenges or that a favorable decision would redress its injuries. As such, Covenant lacks

standing to assert an overbreadth challenge on behalf of third parties.[19] *See Midwest Media Property, L.L.C.* v. *Symmes Township, Ohio*, 2006 WL 2347489, *6 (S.D. Ohio May 22, 2006) (plaintiff advertiser lacked standing to facially challenge sign ordinance because it could not show an actual injury in fact where unchallenged sign ordinance's height and size restrictions precluded its proposed billboards); *Advantage Media, L.L.C.* v. *City of Eden Prairie*, 405 F. Supp. 2d 1037, 1042-43 (D. Minn. 2005) (plaintiff could not satisfy redressability element of standing because it did not specifically challenge the sign restrictions that caused the denial of its applications); *Get Outdoors II, L.L.C.* v. *City of San Diego*, 381 F. Supp. 2d 1250, 1259 (S.D. Cal. 2005) (plaintiff lacked standing to assert overbreadth challenge because its application did not comply with the sign ordinance's unchallenged size restrictions). Accordingly, the court must dismiss Covenant's case for lack of jurisdiction.[20]

---

[19]Having concluded that Covenant cannot satisfy the causal nexus and redressability standing requirements, the court need not consider the City's contention that Covenant also lacks standing to facially attack the Sign Ordinance because it lacks a "substantial interest" in non-commercial speech.

[20]Because Covenant lacks standing to bring either an as-applied or facial challenge to the Sign Ordinance since severable, constitutional provisions of the ordinance prohibited the erection of its proposed billboards, Covenant cannot demonstrate that its constitutional rights were violated. As a consequence, Covenant is not entitled to damages, nor to attorneys' fees and costs as a "prevailing party" under 42 U.S.C. § 1988. In the Seventh Circuit, a "prevailing party" only includes those parties who have obtained a favorable "judicially sanctioned change" in the legal relationship of the parties. *See Fed'n of Advertising Indus. Representatives, Inc.* v. *City of Chicago*, 326 F.3d 924, 932 (7th Cir. 2003) (citing *Buckhannon*, 532 U.S. at 600-01, 121 S. Ct. at 1835, 149 L. Ed. 2d. 855 (2001) (where plaintiff had not obtained an enforceable judgment on the merits, a court-ordered consent decree, or anything else that might be classified as "some other relief by the court," it was not a prevailing party). Thus, Covenant cannot recover attorneys' fees even if it is assumed that the City amended the Sign Ordinance in response to its law suit. Instead, Covenant must succeed on some aspect of the merits of its claims, which, since it lacks standing, it is unable to do. *See id.*

## ORDER

For the reasons stated above, the City's motion for summary judgment [#58] is granted.

Covenant's motion to strike [#75] is denied on the merits in part and as moot in part. The clerk is

instructed to enter judgment in favor of defendants. This case is terminated.

Date: March 7, 2007

Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge