# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COVENANT MEDIA OF ILLINOIS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 8130 |
| vs. ) | |
| ) | Judge Joan H. Lefkow |
| CITY OF DES PLAINES, ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

In this civil rights case plaintiff, Covenant Media, Inc. ("Covenant"), has moved for an award of attorney's fees and costs under the provisions of 42 U.S.C. § 1988. The motion must denied for the reasons that follow.

On December 16, 2004, Covenant initiated this action alleging that the City of Des Plaines's Sign Ordinance was unconstitutional under the First Amendment. It sought damages and an injunction against enforcement of the ordinance. On June 8, 2005, this court denied a motion to dismiss for lack of standing and for failure to state a claim upon which relief may be granted (Dkt. No. 21). In response to this ruling, on August 29, 2005, Des Plaines amended its ordinance in an effort to eliminate unconstitutional provisions.

On June 22, 2005, Covenant moved for a preliminary injunction. The amended ordinance became the subject of Covenant's motion for preliminary injunction. On September 15, 2005, this court issued an opinion and order granting Covenant's motion for a preliminary injunction against enforcement of Des Plaines's amended sign ordinance during the pendency of this litigation (Dkt. No. 43). The docket entry of that date directed the parties to submit a proposed

1

draft injunction order (in conformity with Federal Rule of Civil Procedure 65(d)(1)[1]) to chambers by September 20, 2005 (Dkt. No. 42). On September 20, Des Plaines filed a proposed order (Dkt. No. 46). Any proposed injunction order that may have been submitted by Covenant is not on the case docket.

On September 22, 2005, however, before entry of a draft injunction order, the court ruled the motion moot because Des Plaines had amended its sign ordinance a second time ("Second Amended Sign Ordinance") correcting the constitutional violations that had been identified in the September 15, 2005 order. *See* Mem. Op. and Order of March 7, 2007 at 7-8 (Dkt. No. 121) ("On September 20, 2005, [Des Plaines] enacted the Second Amended Sign Ordinance, removing the provisions identified by the court as the basis for granting Covenant's request for injunctive relief. As a result, this court determined that the motion for preliminary injunction previously granted had become moot and declined to enter Covenant's proposed draft order for injunction.").

The opinion of September 15, 2005 stated fully the reasons for the injunction, and the Order at the end of the Memorandum Opinion stated, "The City is enjoined from enforcing its Amended Sign Ordinance as contained in Article 11 of the City's Zoning Ordinance during the pendency of this suit." Mem. Op. and Order of Sep. 15, 2005 at 14 (Dkt. No. 43). Des Plaines has not rested its position on the fact that an injunction was never entered, so the Court will treat

---

[1]Rule 65(d)(1), Fed R. Civ. P., provides that "[e]very order granting an injunction and every restraining order must:
    (A) state the reasons why it issued;
    (B) state its terms specifically; and
    (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required."

the question before the court as if the September 15 Opinion and Order were sufficiently compliant with Rule 65(d) to amount to an injunction.

The case proceeded. On March 7, 2007 (Dkt. No.121), the court granted Des Plaines's motion for summary judgment. It concluded that Covenant lacked standing to pursue its as-applied challenge to the Second Amended Sign Ordinance because Covenant could not demonstrate that it had suffered a redressable injury in that Des Plaines would have denied the applications for other valid reasons. Specifically, the court found that all of Covenant's applications were within an area where signs could be prohibited: single family residential areas within 660 feet of an interstate highway and beyond the 1959 city limits. For the same reason, the court rejected Covenant's facial challenge. *See id*. at 27 (Covenant has not submitted evidence of "either a causal nexus between its injury and the provisions of the Sign Ordinance it challenges or that a favorable decision would redress its injuries.").

Covenant, however, convinced the court to reconsider its summary judgment on the as-applied challenge because it had overlooked a genuine issue of material fact as to whether Covenant's application to erect a sign at 911 E. Touhy could have been granted but for the offending original ordinance. There was evidence in the record that despite the original ordinance's prohibition of signs in single family residential areas within 660 feet of an interstate highway and beyond the 1959 city limits, like the 911 E. Touhy site, several sign permits had been granted in such areas. Thus the court permitted the case to go to trial, framing the issue as follows:

> Accordingly, the court's mistake of fact led it incorrectly to conclude . . . that Covenant's injuries as to the denial of its permit application for the 911 E. Touhy location were not redressable. That is not to say, though, that the standing issue has now been conclusively and finally determined. Since the Illinois Act and the IDOTs [Illinois Department of Transportation's] implementing regulations on

3

> their face appear to preclude the erection of the billboard at the subject location, the case must proceed to trial to determine whether Covenant can satisfy the redressibility element of the tripartite test for standing.

Mem. Op. and Order of July 26, 2007 at 5 (Dkt. No. 154). The jury was instructed that in order to find for Covenant it must find that Covenant (1) would have completed its application for a sign at 911 E. Touhy by fulfilling specific requirements and (2) would have provided IDOT with the information required to receive an IDOT permit. Jury Instructions at 15 (Dkt. No. 205, incorrectly titled "Proposed" Jury Instructions). The jury returned a verdict for Des Plaines. The only permissible inference of fact from the verdict is that Covenant would not have completed the application for the 911 E. Touhy site. This means that Covenant lacked standing and the court lacked jurisdiction.

**ANALYSIS**

The Attorney's Fees Awards Act of 1976, codified at 42 U.S.C. § 1988(b), authorizes the court in civil rights cases to allow the prevailing party (other than the United States) a reasonable attorney's fee as part of the costs. The issue is whether Covenant is a prevailing party for purposes of 42 U.S.C. § 1988.

Covenant contends that its success on the motion for preliminary injunction that resulted in Des Plaines's amending its unconstitutional ordinance to comply with the court's opinion establishes its prevailing party status because "(i) the Court, based upon a finding of a likelihood of Plaintiff's success on the merits, entered a judicially enforceable injunction materially altering the legal relationship between the parties; (ii) the City chose not to appeal from that order and remained subject to its restrictions for over two years; and (iii) the defendant ultimately avoided final resolution of the merits of Plaintiff's initial case by enacting new legislation." Covenant's

4

Mem. in Supp. of Mot. at 4-5 (Dkt. No. 232-2). Des Plaines contends that, in spite of Covenant's success on the preliminary injunction, Covenant is not a prevailing party because the jury ultimately decided that Covenant had no standing to sue, voiding any temporary victory achieved in the preliminary injunction.

Des Plaines relies on *Buckhannon Bd. and Care Home, Inc*. v. *W. Va. Dept. of Health and Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), which rejected the "catalyst theory" of prevailing party status[3] and held that a litigant who had not obtained a "material alteration of the legal relationship of the parties"[4] was not a "prevailing party." *Id*. at 604-05. *See Palmetto Props., Inc*. v. *County of DuPage*, 375 F.3d 542, 548 (7th Cir. 2004) (characterizing *Buckhannon* as holding "that in order to be a 'prevailing party,' a litigant must have obtained a judgment on the merits, a consent decree, or some other judicially sanctioned change in the legal relationship of the parties.").

Covenant distinguishes *Buckhannon* on the basis that the decision does not foreclose prevailing party status where, as here, Des Plaines adopted the Second Amended Sign Ordinance as a direct result of the court's issuance of an injunction order in favor of Covenant, whereas in *Buckhannon*, it was not a court order or consent decree, but voluntary action by the State, that changed the legal relationship of the parties. The difficulty with Covenant's position is that the court order in this case did not change the legal relationship *between Covenant and Des Plaines*. That Covenant might benefit from the Second Amended Sign Ordinance, should it in the future

---

[3]The Court described the catalyst theory as one "which posits that a plaintiff is a "prevailing party" if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601.

[4]The Court cited as examples a judgment on the merits or a court-ordered consent decree.

actually make and complete an application for a sign, is insufficient to distinguish it from any other non-party potential beneficiary of Covenant's endeavor.

Des Plaines also relies on *Sole* v. *Wyner*, 551 U.S. 74, 77-78, 127 S. Ct. 2188, 2191-92, 167 L. Ed. 2d 1069 (2007), which held that "prevailing party" does not include a plaintiff who gains a preliminary injunction after an abbreviated hearing but is denied a permanent injunction after a dispositive adjudication on the merits. Covenant attempts to distinguish *Sole* on the basis that in *Sole* the preliminary injunction was "reversed, dissolved, or otherwise undone" by the final decision in the same case, whereas here the preliminary injunction was not undone by this court's decision on summary judgment, or the jury's verdict at trial. Covenant's Reply at 5 (Dkt. No. 234).

In *Sole*, the plaintiff obtained a preliminary injunction against Florida's "bathing suit rule" that interfered with her ability to display a Valentine's Day anti-war artwork using nude individuals on a beach. The court preliminarily enjoined enforcement against the plaintiff so long as the artwork was displayed behind a screen that protected members of the public on the beach who did not want to observe nudity. At the actual event, however, the participants failed to stay behind the screen, so when the plaintiff sought a permanent injunction for future displays, the court denied it because it determined that the bathing suit rule was necessary to protect the public from the unwanted observation of nudity on a public beach.

The plaintiff sought fees on the basis that, although she did not ultimately prevail, she did obtain a preliminary injunction that permitted her to display her Valentine's Day artwork one time. The district court accepted that argument, but the Supreme Court did not: "Prevailing party status, we hold, does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole*, 551 U.S. at 83.

*Sole* is instructive here because, in the end, the facts found by the jury determined the result that plaintiff had no standing to bring this lawsuit in the first place. That can only mean that a preliminary injunction was a preliminary decision based on incomplete facts just as it had been in *Sole*. As the Court there stated, "[T]he eventual ruling on the merits for defendants, after both sides considered the case fit for final adjudication, superseded the preliminary ruling. [The plaintiff's] temporary success rested on a premise the District Court ultimately rejected." *Id*. at 84-85.

Recently, the Seventh Circuit decided *Walker* v. *Calumet City*, 565 F.3d 1031, 1032 (7th Cir. 2009), where the plaintiff, a property owner, challenged the constitutionality of an ordinance that required properties to be inspected and code violations corrected before they could be sold. The district court entered a preliminary injunction. When the plaintiff's property was inspected and it was determined that violations had been corrected, and the city agreed not to enforce its ordinance against the subject property and to designate it as a legal nonconforming use, the court dismissed the case as moot but still awarded attorney's fees because the plaintiff had achieved "total victory." The court of appeals ruled that the award of fees was in conflict with *Buckhannon:* "[B]ecause no judgment was rendered by the district court on the merits of her claims, [the plaintiff] is not a prevailing party under the first example given in *Buckhannon*." Walker, 565 F.3d at 1034.

There is no need to elaborate further.[5]  No judgment on the merits of Covenant's claims

[5]Covenant cites many cases, some pre-dating *Buckhannon*, which will not be discussed here, and most from other circuits, which lend little guidance where the Seventh Circuit has rendered ample exposition of *Buckhannon* to guide the analysis. The post-*Buckhannon* Seventh Circuit cases that Covenant cites are addressed briefly in this note.

*Southworth* v. *Bd. of Regents of Univ. of Wis. Sys.*, 376 F.3d 757, 759 (7th Cir. 2004), affirmed an award of fees to students who, although they did not prevail in the United States Supreme Court on their original complaint seeking to bar the university from collecting mandatory student fees, they were permitted to amend their complaint on remand and did obtain a district court ruling that the mandatory fee system violated the principle of viewpoint neutrality. The district court's ruling led the University to adopt detailed criteria and procedures governing funding decisions that did benefit the plaintiff students (according to the court–but this might be questionable since the litigation was filed in 1996 and at least two generations of students would likely have come and gone during that period of time). See *Fry* v. *Bd of Regents of Univ. of Wis. Sys.*, 132 F. Supp. 2d 744 (W.D. Wis. 2000) (reflecting a 1996 filing date.)) The students also prevailed on appeal challenging some of those criteria. *Southworth*, F376 F.3d at 768. Although the cases are parallel in that the court's ruling on the preliminary injunction led directly to Des Plaines's amending its ordinance, here, unlike the students in *Southworth*, Covenant achieved nothing for itself, so there was no change in the legal relationship of the parties.

*Gatreaux* v. *Chicago Hous. Auth.*, 491 F.3d 649, 662 (7th Cir. 2007), dealt with post-consent decree enforcement proceedings, where the court rejected CHA's argument that agreed-to modifications to the decree over a period of years eliminated the plaintiffs' prevailing party status. The situation in *Gatreaux* is hardly comparable, but it is significant that the court rested its ruling on the continued binding effect of the original decree and the actual benefits achieved for the plaintiff class, facts not present here. See *id.* at 654*ff.*

In *Palmetto Props., Inc.* v. *County of DuPage*, 375 F.3d 542, 546 (7th Cir. 2004), the district court ruled in favor of the plaintiffs on a motion for summary judgment, holding that a portion of the County's ordinance restricting location of an adult entertainment establishment within a certain distance of a forest preserve was unconstitutional. The County advised the court that it intended to amend the ordinance, so the court continued the case in lieu of entering a final judgment order. Once the ordinance was amended, the court ruled the case moot. The district court awarded fees and the court of appeals affirmed, finding that the legal relationship of the parties was changed by the summary judgment, also indicating that the County qualified as "mischievous," *id.* at 550, and stating,

> It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case – a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance – Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.

*Id*. at 549-50. If Des Plaines set out to game § 1988 by mooting the case with its Second Amended Sign Ordinance, its strategy was ineffective. Rather, this litigation continued two-and-a-half years past the entry of the preliminary injunction, through a trial and, ultimately, Des

was rendered because, at the end of this long road of litigation, Covenant's lack of standing to bring its law suit was established. Without standing to sue, the court lacks jurisdiction. Without jurisdiction, there can be no judicially sanctioned change in the relationship between the parties.

**ORDER**

Covenant's motion for attorney's fees is denied. Costs and expenses are also denied.

Date: July 31, 2009                     Enter:_____
                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge

---

Plaines's original position that Covenant lacked standing prevailed.